## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

STATE OF MISSOURI *ex rel.*
CATHERINE L. HANAWAY,
ATTORNEY GENERAL OF MISSOURI,

&

MERLYN JOHNSON,

      *Plaintiffs*,

        v.                               Case No.

MISSOURI STATE HIGH SCHOOL
ACTIVITIES ASSOCIATION,

      *Defendant*.

### COMPLAINT

Plaintiffs, the State of Missouri, appearing on the relation of its Attorney General, and Merlyn Johnson, for their Complaint respectfully allege as follows:

### INTRODUCTION

1.    Missouri brings this lawsuit because the Missouri State High School Activities Association (MSHSAA) has violated federal law prohibiting race and sex discrimination. MSHSAA ties eligibility for its at-large positions on its Board of Directors to racial and sex-based qualifications, and as such discriminates on the basis of race and sex with respect to its board membership. *See* Ex. A at 21 (MSHSAA Const. art. IV, § 2.b.2). Just a few months ago, MSHSAA refused to consider Merlyn Johnson for a seat on its board solely because of his race and sex. That is patently unlawful.

2.      Nearly three years ago, the Supreme Court made clear that federal law does not tolerate differential treatment based on race: "Eliminating racial discrimination means eliminating all of it." *Students for Fair Admissions, Inc. v. Pres. & Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023) (hereinafter *SFFA*).

3.      That is because "[d]istinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality." *Id.* at 208 (citation omitted)).

4.      This principle applies not only to college admissions, but also, as here, to decisions regarding who will lead a policy-making organization and employer. *See, e.g.*, *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989). "The time for making distinctions based on race has passed." *SFFA*, 600 U.S. at 204.

5.      In 1868, the States ratified the Fourteenth Amendment, in part to prohibit any state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

6.      "The clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States." *Loving v. Virginia*, 388 U.S. 1, 10 (1967). Actions taken on the basis of race are subject to strict scrutiny. *See SFFA*, 600 U.S. at 213. Governments may "never use race as a stereotype or negative" and racial classifications must be temporary in nature. *Id.*

7.      Sex-based distinctions are also "carefully inspected" under the Fourteenth Amendment. *United States v. Virginia*, 518 U.S. 515, 532 (1996).

8.     A state actor "must show 'at least that the [challenged] classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives.'"  *Id.* at 524 (quoting *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982)).

9.     Denying a leadership position to someone based on sex serves no lawful purpose.

10.     One of the most important pieces of legislation in this Nation's history to help ensure that all are treated equal and protected from the harms of discrimination is the Civil Rights Act of 1964.

11.     Its plain language "irrefutably demonstrates that Congress meant precisely what it said in §§ 703(a) and (d) [what is now 42 U.S.C. § 2000e-2(a), (d)]—that no racial discrimination in employment is permissible under Title VII, not even preferential treatment of minorities to correct racial imbalance." *United Steelworkers of Am., AFL-CIO-CLC v. Weber*, 443 U.S. 193, 230 (1979) (Rehnquist, J., dissenting).

12.     "In passing Title VII, Congress outlawed all racial discrimination, recognizing that no discrimination based on race is benign, that no action disadvantaging a person because of his color is affirmative." *Id.* at 254.  In short, "Title VII codif[ies] a categorical rule of individual equality, without regard to race." *SFFA*, 600 U.S. at 290 (Gorsuch, J., concurring) (cleaned up).

13.     Title VII also prohibits discrimination "because of . . . sex." 42 U.S.C. § 2000e-2(a)(2).  "Males as well as female employees are protected against discrimination." *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 682 (1983).

14.    "[T]hat statute was conceived and enacted to make discrimination against any individual illegal." *United Steelworkers*, 443 U.S. at 218 (Burger, C.J., dissenting).

15.    Another vitally important piece of legislation to help ensure equal and full benefits of the law for all is the Civil Rights Act of 1866.

16.    Among other rights, its plain language ensures "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws and proceedings for the security of persons and property."  42 U.S.C. § 1981.

17.    "[D]iscrimination on the base of race interferes[] with . . . 'the full and equal benefit of all laws and proceedings for the security of persons and property.'" *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 766 (8th Cir. 2016).

18.    Indeed, most people know discrimination is wrong, and that "[t]he way to stop discrimination on the basis of race is to stop discriminating on the basis of race." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 748 (2007) (plurality opinion).

19.    After all, racial "classifications promote notions of racial inferiority and lead to a politics of racial hostility, reinforce the belief, held by too many for too much of our history, that individuals should be judged by the color of their skin, and endorse race-based reasoning and the conception of a Nation divided into racial blocs, thus contributing to an escalation of racial hostility and conflict." *Id.* at 746 (cleaned up).

20.    MSHSAA unfortunately disagrees.   Indeed, for years, and to this day, MSHSAA has openly discriminated in choosing members of its Board of Directors.

21.    The State gave MSHSAA an opportunity to retreat from its unlawful discrimination.  Yet MSHSAA has made clear it will continue discriminating unless a court orders it to stop.  *See* MSHSAA Response to Attorney General Announcement (Nov. 19, 2025), https://www.mshsaa.org/News.aspx?id=47 (stating that MSHSAA will continue enforcing its race and sex-based criteria for its at-large board seats).

22.    At base, this case is easy.  MSHSAA openly admits it discriminates on the basis of race because it wants a racial balance on its board.  *See* Ex. B at 12.  But the Supreme Court has made clear "'[o]utright racial balancing' is 'patently unconstitutional.'"  *SFFA*, 600 U.S. at 223 (quoting *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 311 (2013)).

23.    Plaintiffs are therefore entitled to declaratory and injunctive relief against MSHSAA's continued enforcement of its discriminatory criteria for its at-large board seats.

## PARTIES

### I.    Plaintiffs

24.    Plaintiff State of Missouri is a sovereign State of the United States of America.

25.    Catherine Hanaway is the 45th Attorney General of the State of Missouri.

26.    Attorney General Hanaway is authorized to bring actions on behalf of Missouri that are "necessary to protect the rights and interests of the state, and enforce any and all rights, interests or claims against any and all persons, firms or corporations in whatever court or jurisdiction such action may be necessary."  Mo. Rev. Stat. § 27.060.

27.    Plaintiff Merlyn Johnson is a citizen of Missouri and the United States.

28.     Dr. Johnson is the Superintendent of Cassville R-IV School District.

29.     Dr. Johnson is a Caucasian, non-Hispanic male.

30.     Dr. Johnson was a nominee for the MSHSAA Board of Directors for the At-Large Region 2 board seat in 2025.  *See* Ex. B at 12.

31.     At the time of Dr. Johnson's nomination, MSHSAA's Board had a majority of male and white, non-Hispanic members.  *See id.*

32.     MSHSAA rejected Dr. Johnson's candidacy solely because of his race and sex. *See id.*  As MSHSAA's executive director, Dr. Jennifer Rukstad, explained in an email, Dr. Johnson's being a white male made him "not eligible to be a candidate for" the at-large board position.  *Id.* (citing MSHSAA Const. art. IV, § 2.b.2 (Ex. A at 21)).

33.     The State of Missouri, on the relation of its Attorney General, and Dr. Johnson bring this action to put an end to MSHSAA's campaign of systemic racial and sex-based discrimination.

34.     They come to this Court asking for an order they should never have had to request, compelling MSHSAA to end its discriminatory practice of hiring.

35.     MSHSAA injured Dr. Johnson through denying him consideration for a position based on his race and sex.

36.     Missouri, through its Attorney General, has the authority to bring this action because this suit alleges MSHSAA has, is, and will keep engaging in systemic race and sex discrimination against Missourians, which is conduct in which the State has an express interest under Mo. Rev. Stat. §§ 27.060, 213.126.

37.    Likewise, Missouri has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general.

38.    "[A] State's interests in the health and well-being of its residents extend beyond mere physical interests to economic and commercial interests." *Alfred L. Snapp & San, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 609 (1982).

39.    States have a similar stake in securing residents from the harmful effects of discrimination—particularly with actors wielding regulatory authority.

40.    Deliberate efforts to stigmatize applicants as unqualified because of race or sex carry a universal sting.

41.    States can seek, in the federal courts, to protect their residents from such discrimination to the extent that it violates federal law.  *See* 13B Wright & Miller, Federal Practice and Procedure Jurisdiction § 3531.11.1 (3d ed. 2025).

42.    Missouri sues to vindicate its quasi-sovereign interest in securing its residents from the harmful effects of race and sex discrimination that MSHSAA has caused, is causing, and, if not stopped, will keep causing.

43.    The Fourteenth Amendment and federal antidiscrimination statutes create benefits and alleviate hardships of race and sex discrimination of state actors.

44.    The State, of course, recognizes the odiousness of its actors engaging in discriminatory activity while acting in the State's name and exercising the State's regulatory authority.  This creates an interest for the State to eliminate any and all violations of federal antidiscrimination law.

45.     Therefore, Missouri has an interest, independent of the impacts that might accrue to any particular individual, in assuring that the benefits of the federal law are not denied to its general population.

46.     Federal statutes, more specifically Title VII and 42 U.S.C. § 1981, create benefits or alleviate hardships for all because they seek to deter discrimination by employers on the bases of race, color, sex, and national origin and provide relief from it when it unlawfully happens. *See*, *e.g.*, 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 1981.

47.     Thus, Missouri sues to vindicate its quasi-sovereign interest in ensuring its residents are not excluded from the benefits that are to flow from, and hardships that are to be alleviated by, Title VII and Section 1981.

48.     Dr. Johnson has distinct interests in being free from unlawful discrimination under the Fourteenth Amendment to the U.S. Constitution and federal statutes.

49.     As a state actor, MSHSAA's refusing to consider Dr. Johnson for an at-large board position free of discrimination on the basis of his race and sex constituted a deprivation of "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

50.     Likewise, MSHSAA denied Dr. Johnson "the full and equal benefit of all laws and proceedings for the security of persons and property." *Id.* § 1981(b).

51.     Dr. Johnson therefore sues to vindicate his individual interests against unjust discrimination.

## II.     Defendant

52.     Defendant MSHSAA is "a voluntary, nonprofit, educational association of secondary schools established for the purpose of working collaboratively to develop

and adopt standards of supervision and administration to regulate the diverse interscholastic activities and contests which are delegated by the member schools to the jurisdiction of the Association." Ex. A at 17 (MSHSAA Const. art. II, § 2).

53.     MSHSAA's members are Missouri schools.   On information and belief, MSHSAA has 724 member schools, the majority of which are public schools.[1]

54.     Member schools must renew their membership each year and pay an annual fee. *Id.* at 19–20 (MSHSAA Const. art. III, §§ 3, 5.b).  For public schools, this request for membership and annual fee are approved by the public-school board.  *Id.* at 18 (MSHSAA Const. art. III, § 1).

55.     Member schools elect board members from eligible candidates for their respective membership district and respective at-large region.  *Id.* at 22 (MSHSAA Const. art. IV, § 3.a).   Member schools also vote and approve amendments to MSHSAA's Constitution.  *Id.* at 25 (MSHSAA Const. art. VI, § 2).  Member schools are represented by their principals and superintendents.  *Id.*

56.     On information and belief, MSHSAA also has 249 affiliate-registered schools and 28 home-school associations.[2]  Many of these schools are public schools.

57.     Affiliate registered schools are not members, but they still must renew their affiliate registration and pay an annual fee. *Id.* at 20 (MSHSAA Const. art. III, §§ 6–7).

---

[1] *Member School Listing*, MSHSAA, https://www.mshsaa.org/Schools/SchoolListing.aspx (last visited Jan. 22, 2026).

[2] *Id.*

58.     MSHSAA's major revenue sources are ticket sales from tournaments and festivals as well as activity participation and tournament registration fees.  *See* Ex. C at 5.

59.     MSHSAA employs more than fifteen employees.  *See* Ex. A at 5.

60.     MSHSAA's employees are eligible for membership in the state-retirement system.  *See* Ex. D at 3.

61.     MSHSAA maintains an office at 1 North Keene Street, Columbia, MO 65201.

62.     MSHSAA is governed by its Board of Directors.  Ex. A at 21 (MSHSAA Const. art. IV, § 2.a).

63.     Absent specific circumstances not at issue, the Board includes ten elected directors.  *Id.*

64.     Eight directors are district members, each from one of the eight membership districts.  These district-member directors must "be active school superintendents, principals, or activities directors of member schools in good standing in their respective districts."  *Id.* (MSHSAA Const. art. IV, § 2.b).

65.     Two directors are elected from two different at-large regions.  These directors must also meet the same professional standards as the district member directors.  But they also have additional qualifications.  "Each of two At-Large positions shall be filled by a candidate representing the under-represented gender of the current Board, or an under-represented ethnicity."  *Id.* (MSHSAA Const. art. IV, § 2.b.2).

66.     Given the Board's leadership role, decisions of the Board affect MSHSAA's statewide policy as well as MSHSAA's employees.

67.    On information and belief, MSHSAA has rejected candidates for at-large board positions based on the candidates' genders and/or ethnicities.  At minimum, MSHSAA rejected Dr. Johnson on these bases.  *See* Ex. B at 12.

68.    Jennifer Rukstad is the Executive Director of MSHSAA.

69.    As Executive Director, Dr. Rukstad is responsible for "carry[ing] out the policies of the Board of Directors."  Ex. A at 24 (MSHSAA Const. art. IV, § 7.a).

## JURISDICTION AND VENUE

70.    This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5(f)(3) because this case involves claims under a provision of the U.S. Constitution, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. §§ 1981 and 1983.

71.    This Court has the authority to issue the requested declaratory relief under 28 U.S.C. §§ 2201–2202, 42 U.S.C. § 2000e-5(f)(3)–(g), and this Court's inherent equitable authority.

72.    This Court's exercising general personal jurisdiction over MSHSAA is proper under the Due Process Clause because it maintains its principal place of business in Missouri.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

73.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because MSHSAA is deemed to reside in the Eastern District and is a resident of the State.

74.    MSHSAA maintains sufficient contacts in the Eastern District that it could reasonably anticipate being subject to suit in this District.

75.    MSHSAA has numerous member schools in the Eastern District and exercises oversight authority across the entire State.

<u>FACTS COMMON TO ALL COUNTS</u>

76.     MSHSAA's Constitution specifies the eligibility for at-large directors. "Each of two At-Large positions shall be filled by a candidate representing the under-represented gender of the current Board, or an under-represented ethnicity." Ex. A at 21 (MSHSAA Const. art. IV, § 2.b.2).

77.     In 2025, Dr. Johnson was nominated for the MSHSAA Board of Directors At-Large Region 2 seat. Ex. B at 12.

78.     Because the current board has "a majority of males" and "a majority of white, non-Hispanic members," MSHSAA told Dr. Johnson that he was "not eligible to be a candidate for this seat" unless he was a woman or an ethnic minority. *Id.*

79.     MSHSAA rejected his candidacy on the basis of Dr. Johnson's race and sex. *Id.*

80.     Following his disqualification for the at-large board seat by MSHSAA, Dr. Johnson contacted the State Auditor regarding his disqualification. *See id.* at 1.

81.     The State Auditor then sent inquiries to MSHSAA, asking the organization to confirm its policy with respect to the at-large board seats and explain why its policy was not discriminatory. *See id.* at 3, 10–11.

82.     In response to the State Auditor, MSHSAA stood firmly behind its policy—providing detailed responses attempting to justify its discrimination for the at-large board positions.

83.     It explained, "The at-large positions serve a distinct and important purpose: they provide an opportunity to ensure that voices not otherwise represented in the regional structure—including those from demographics underrepresented by the other board members—can be included in the Association's leadership.     The

12

constitutional language related to at-large board positions is deliberately designed to promote inclusivity while avoiding any form of exclusion or rigid identity-based quotas." *Id.* at 7.

84.    MSHSAA specifically emphasized "the importance of including perspectives from groups that are underrepresented in the current board." *Id.* It contended that its policy regarding the at-large board seats "ensur[es] that voices not currently reflected in the Board's composition have the opportunity to be heard in its deliberations." *Id.* at 8.

85.    It said that the at-large board seats "offer[] a pathway to ensure that voices not currently represented at the table can be considered for leadership" and that "the at-large seats provide an additional opportunity to make certain the board is not missing perspectives critical to the mission of serving a diverse statewide student population." *Id.* at 7–8.

86.    In other words MSHSAA repeatedly tried to assert that its policy is not discriminatory because it blends different representational aspects: "[T]he eligibility requirements are tied to specific seats, and by design they ensure balanced representation across both geographic regions and demographic groups." *Id.* at 13. Moreover, it said that its policies "define the qualifications attached to specific board positions in order to ensure that representation is not concentrated in one region or demographic group." *Id.*

87.    MSHSAA then attempted to justify its policy regarding at-large board positions under federal law. It exclaimed that "[e]nsuring inclusive representation

on a statewide regulatory board that impacts 720 public and private school communities is a legitimate and compelling interest." *Id.* at 8. It then said that its provision is narrowly tailored because it "applies to only two seats out of ten and does not preclude any qualified candidate from seeking or serving. Additionally, these seats are an addition to the regional structure. It simply ensures that when significant and meaningful disparities in representation exist, deliberate but measured steps may be taken to address them." *Id.*

88.    In response to concern about new federal cases controlling the analysis of antidiscrimination claims, MSHSAA said, "We are mindful of decisions such as *Students for Fair Admissions v. Harvard*, which cautions against rigid racial preferences in higher education. That case, however, does not prohibit race- or gender-conscious policies altogether[.]" *Id.* It further asserted, "Courts have repeatedly affirmed that bodies may adopt policies to promote diversity and inclusion, provided those policies are not rigid quotas and do not operate to categorically exclude individuals based on race or gender." *Id.*

89.    MSHSAA further justified its policy by saying that in its 100-year history, it "never had a minority or female board member initially join the Board through the standard nomination and election process prior to the addition of the at-large provision . . . . The enduring underrepresentation highlights the presence of systemic barriers to participation, and the at-large provision aims to address this imbalance." *Id.* at 9.

14

90.    MSHSAA contended that its reservation of the at-large seats based on race and sex-consciousness did not discriminate against anyone—including Dr. Johnson—because anyone "regardless of gender or ethnicity, is free to run for a seat on the board from their respective board district." *Id.* at 7.

91.    In response to the State Auditor's concern about why Dr. Johnson was disqualified, MSHSAA said, "he was unable to run for a particular at-large seat because he did not meet the current qualifications attached to that seat pursuant MSHSAA's Constitution." *Id.* at 13.

92.    Finally, MSHSAA proclaimed, "Equity is not the enemy of democracy. Representation is not discrimination." *Id.* at 9.

93.    Given MSHSAA's intractability in holding fast to unlawful discriminatory affirmative action policies, the State Auditor referred the results of his investigation of Dr. Johnson's complaint to the Attorney General. *Id.* at 1–2.

94.    The State Auditor emphasized how "MSHSAA derives much of [its] funding from public sources and plays an important role in the extracurricular life of Missouri's children." *Id.* at 1.

95.    The State Auditor also explained how "MSHSAA admits [Dr. Johnson] was barred from consideration because of [his] gender and race." *Id.* And he found MSHSAA's defense of "obvious problems" especially troubling. *Id.*

96.    In urging the Attorney General to "use all of the resources at your disposal to right this wrong," the State Auditor emphasized, "Missouri students deserve to have the most qualified, most committed individuals working on their behalf rather than

15

the correct mix of genders and ethnicities as prescribed by MSHSAA.  When we choose our student's representatives based on their gender or race, or other immutable characteristics, rather than their ability to help our kids and keep them safe – we all lose."  *Id.* at 1–2.

97.     The Attorney General fully agrees with the State Auditor and will not tolerate race- or sex-based discrimination within Missouri.

**C**AUSES OF **A**CTION

**Count 1**
**Unlawful Race and Sex Discrimination**
**42 U.S.C. § 1983**

98.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

99.     It is unlawful for a state actor to discriminate against an individual because of the individual's race or sex.  *See* U.S. Const. amend. XIV, § 1.

100.    MSHSAA is a state actor.  MSHSAA is "overborne" by the same "pervasive entwinement of public institutions and public officials in its composition and workings" as bodies previously found to be state actors.  *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001).

101.    "MSHSAA is an association comprised primarily of public schools . . . ."  *In re U.S. ex rel. MSHSAA*, 682 F.2d 147, 151 (8th Cir. 1982); *see Brentwood Acad.*, 531 U.S. at 298 (noting "public schools" comprised 84% of schools in state high school athletic association).  Under MSHSAA's bylaws, "each member school is represented by its principal or [superintendent], who has a vote in selecting members of the" board "from eligible principals, [activities directors], and superintendents."  *See Brentwood*

*Acad.*, 531 U.S. at 298.  Missouri public schools belonging to MSHSAA "can sensibly be seen as exercising their own authority to meet their own responsibilities" of providing some mechanism to produce rules and regulate competition.  *Id.* at 299.

102.   The "principal part" of MSHSAA's revenue comes from ticket sales from tournaments and festivals as well as activity participation and tournament-registration fees.  *See id.*  MSHSAA-member schools thus "obtain membership in the service organization and give up sources of their own income to" MSHSAA.  *Id.*

103.   "To complement the entwinement of public school officials with [MSHSAA] from the bottom up, the State of [Missouri] has provided for entwinement from the top down."  *Id.* at 300.  MSHSAA's employees are "eligible for membership in the state retirement system."  *Id.*

104.   "[E]ntwinement to th[is] degree . . . requires" that MSHSAA be considered a state actor.  *Id.* at 302.

105.   MSHSAA is a "person" under 42 U.S.C. § 1983.  *See Wright v. Ark. Activities Ass'n*, 501 F.2d 25, 27–28 (8th Cir. 1974).

106.   MSHSAA refused to consider Dr. Johnson for the at-large board position because of his race and sex.

107.   Acting pursuant to MSHSAA's adopted constitution does not insulate its actions from judicial review.

108.   Refusing to consider a candidate because of his or her race is race discrimination.  *See Gibson v. Mississippi*, 162 U.S. 565, 591 (1896).

109.   MSHSAA's policy attempts to balance the race and sex of the Board.  Excluding candidates because of their races and sexes inherently means selecting candidates with races and sexes that are different from the majority of the board.  "That would amount to outright racial balancing, which is patently unconstitutional." *Grutter v. Bollinger*, 539 U.S. 306, 330 (2003) (cleaned up).

110.   The race of the candidate denied eligibility does not matter.  *See SFFA*, 600 U.S. at 206.  The Equal Protection Clause "accord[s] the same protection" to all races and ethnicities.  *Id.*

111.   MSHSAA asserted a combined "legitimate and compelling interest" for its discriminatory policy.  But a "legitimate" interest cannot justify a racial classification. *See SFFA*, 600 U.S. at 207.

112.   MSHSAA's asserted interest of "ensuring inclusive representation on a statewide regulatory board," Ex. B at 8, does not meet the constitutional requirements of a compelling governmental interest.

113.   "Racial balancing is not transformed from 'patently unconstitutional' to a compelling state interest simply by relabeling it 'racial diversity.'" *Parents Involved*, 551 U.S. at 732 (plurality opinion).

114.   Even if inclusive representation was a compelling interest (and it is not), MSHSAA's goal of "inclusive representation" is not sufficiently coherent for the purposes of strict scrutiny.  *See SFFA*, 600 U.S. at 214–15.  There is no standard for a court to measure whether sufficient "inclusiv[ity]" has been achieved.  *See id.*  And MSHSAA's assumption that minorities will "'usually bring something that a white

[male] cannot offer'" qualifies as a "pernicious stereotype." *Id.* at 220. As the Supreme Court said, "We have time and again forcefully rejected the notion that government actors may intentionally allocate preference to those 'who may have little in common with one another but the color of their skin.'" *Id.* (citation omitted).

115. Nor can MSHSAA claim that reserving board seats for minorities is akin to its dividing seats based on geography: "The entire point of the Equal Protection Clause is that treating someone differently because of their skin color is *not* like treating them differently because they are from a city or from a suburb . . . ." *Id.*

116. MSHSAA's discriminatory policy also fails narrow tailoring.

117. That MSHSAA only discriminates against candidates for its two at-large seats and not for the other eight seats cannot qualify as narrow tailoring. The Fourteenth Amendment does not permit discriminatory treatment for some positions because the other positions are constitutionally compliant.

118. Refusing to consider a candidate "simply because" of his or her sex is sex discrimination and is no more permissible than race under the Equal Protection Clause. *See Virginia*, 518 U.S. at 532.

119. The sex of the candidate denied eligibility does not matter. *Id.*

120. A "legitimate" interest cannot justify a sex-based classification. *See id.* at 539–40.

121. And with respect to narrow tailoring, MSHSAA's discriminatory policy is not "substantially related" to the asserted interest of inclusivity. *Id.* at 533.

122.    MSHSAA discriminated against Dr. Johnson when it found him ineligible for the at-large board position.

123.    This action constituted a violation of Dr. Johnson's rights under the Fourteenth Amendment's Equal Protection Clause.

124.    Hence, MSHSAA has denied Dr. Johnson "rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983.

125.    Dr. Johnson is therefore entitled to judgment against MSHSAA in the form of a declaration and nominal damages.

## Count 2
### Unlawful Race and Sex Discrimination
### U.S. Const. Amend. XIV, § 1

126.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

127.    MSHSAA has barred candidates—including Dr. Johnson—from its at-large board positions because of the candidates' race or sex.

128.    For the reasons explained in Count 1 above and incorporated by reference here, MSHSAA's policy with respect to its at-large board positions violates the Equal Protection Clause of the Fourteenth Amendment.

129.     MSHSAA's discrimination against otherwise eligible candidates for the at-large board positions adversely affects the State's quasi-sovereign interests in "the health and well-being—both physical and economic—of [Missourians] in general." *See Alfred L. Snapp & Son*, 458 U.S. at 607; *see also id.* at 609 (recognizing "the political, social, and moral damage of discrimination" on a substantial segment of the State even though the tangible effects were limited).

130.   The State therefore has *parens patriae* standing to seek relief to protect its quasi-sovereign interest. *Lynch v. Nat'l Prescription Adm'rs*, 787 F.3d 868, 872 (8th Cir. 2015).

131.   The State, through the Attorney General, may sue to enforce federal law against a state actor. *See Va. Off. for Protection & Advocacy v. Stewart*, 563 U.S. 247, 256 (2011).

132.   The State is therefore entitled to judgment under 42 U.S.C. § 1983.

133.   Alternatively, or in addition, the State may sue to enjoin a party acting under color of state law. *See, e.g.*, *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 50 U.S. (9 How.) 647, 657–58 (1850). As the Eighth Circuit has explained, "there is an equitable tradition of suits to enjoin unconstitutional action by state actors." *United States v. Missouri*, 114 F.4th 980, 986 (8th Cir. 2024) (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015)).

134.   Because the State has significant sovereign interests in ensuring its power is not being used to discriminate and a quasi-sovereign interest in protecting the welfare of its citizens, the State is entitled to declaratory and injunctive relief against MSHSAA.

### Count 3
### Unlawful Discriminating with Respect to Conditions of Employment
### 42 U.S.C. § 2000e-5(f)

135.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

136.   MSHSAA is a person subject to Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e(a).

137.   MSHSAA is an employer under that same Act.  42 U.S.C. § 2000e(a)–(b).

138.   MSHSAA has discriminated in the selection of its leadership on the basis of race and sex.

139.   MSHSAA's employees have a "right to work in an environment free of unlawful discrimination." *Clayton v. White Hall Sch. Dist.*, 875 F.2d 676, 679 (8th Cir. 1989).

140.   MSHSAA's employees "who were not themselves the objects of discrimination, but [are] nevertheless injured" by MSHSAA's discriminatory policy.  *Id.* (quoting *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209–10 (1972)).

141.   Title VII authorizes civil suits by a "person claiming to be aggrieved."  42 U.S.C. § 2000e-5.

142.   The State is a person.  *Id.* § 2000e(a).

143.   The State is aggrieved by MSHSAA's subjecting its employees to leadership tainted by unlawful discrimination.  *See Clayton*, 875 F.2d at 679.

144.   The State is entitled to declaratory relief and an injunction prohibiting MSHSAA from continuing to select members of its managerial body on the basis of race and sex.  42 U.S.C. § 2000e-5(g)(1).

## Count 4
### Discriminatory Protection of the Full and Equal Benefit of All Laws
### 42 U.S.C. § 1981

145.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

146.   "All persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws and proceedings for the security of persons and property . . . ."  42 U.S.C. § 1981(a).

147.   MSHSAA is a state actor subject to the strictures of Section 1981.   *See Brentwood Acad.*, 531 U.S. at 298–301.

148.   "[D]iscrimination on the base of race interferes[] with . . . 'the full and equal benefit of all laws and proceedings for the security of persons and property.'" *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 766 (8th Cir. 2016) (cleaned up).

149.   In discriminating against Dr. Johnson on the basis of race and sex, MSHSAA denied Dr. Johnson the full and equal benefit of the law.

150.   The State also has quasi-sovereign interests in "the health and well-being—both physical and economic—of [Missourians] in general." *See Alfred L. Snapp & Son*, 458 U.S. at 607.  This includes protecting its citizens from "the political, social, and moral damage of discrimination." *Id.* at 609.

151.   MSHSAA has violated, is violating, and will continue to violate 42 U.S.C. § 1981.

152.   Both the State and Dr. Johnson are entitled to declaratory relief for MSHSAA's violations of Section 1981.  The State is entitled to injunctive relief against MSHSAA to prevent further violations and Dr. Johnson is entitled to nominal damages.

## PRAYER FOR RELIEF

The State of Missouri, appearing on the relation of its Attorney General, and Dr. Johnson pray this Court:

1.   Declare, adjudge, and decree that the actions detailed herein are unlawful under Amendment XIV, § 1 of the U.S. Constitution and the Civil Rights Acts of 1866 (42 U.S.C. § 1981) and 1964 (Title VII);

2.     Issue declaratory relief stating that MSHSAA's establishing race and sex-based qualifications for its at-large board positions are unconstitutional;

3.     Permanently enjoin MSHSAA, its directors, officers, and agents from disqualifying candidates for the at-large positions on the basis of race or sex and from engaging in unlawful discrimination on the bases of race and sex;

4.     Award nominal damages to Dr. Johnson in the amount of $1.00;

5.     Order MSHSAA to pay Dr. Johnson's costs and attorneys' fees, 42 U.S.C. § 2000e-5(k); and

6.     Award all other relief this Court deems equitable and just.

Dated: February 4, 2026                    Respectfully submitted,


**CATHERINE L. HANAWAY**
ATTORNEY GENERAL

*/s/ Louis J. Capozzi III*
Louis J. Capozzi III, #77756(MO)
   *Solicitor General*
William James Seidleck, #77794(MO)
   *Principal Deputy Solicitor General*
Graham Miller, #77656(MO)
   *Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
Old Post Office Building
815 Olive Street, Suite 200
St. Louis, MO 63101
Phone: (573) 645-9662
William.Seidleck@ago.mo.gov
Graham.Miller@ago.mo.gov

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of this Complaint shall be served in accordance with Federal Rule of Civil Procedure 4.


*/s/ Louis J. Capozzi III*