**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |
|---|---|
| STATE OF MISSOURI *ex rel.* CATHERINE L. HANAWAY , ATTORNEY GENERAL OF MISSOURI, <br><br> & <br><br> MERLYN JOHNSON, <br><br> *Plaintiffs*, <br><br> v. <br><br> MISSOURI STATE HIGH SCHOOL ACTIVITIES ASSOCIATION, <br><br> *Defendant*. | Case No. 4:26-cv-00171-SRC <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE** |

## I.    INTRODUCTION

The United States respectfully moves, pursuant to Federal Rule of Civil Procedure 24 and 42 U.S.C. § 2000h-2, for leave to intervene in this action to remedy significant violations of the U.S. Constitution arising from the Defendant Missouri State High School Activities Association's ("MSHSAA") adoption and implementation of its Board of Directors eligibility rules—rules whereby candidates for certain Board seats are categorized by race and sex, and then either granted or denied an opportunity to stand for election to those Board seats based on the category in which the candidates fall.

As shown below, the United States should be granted intervention as of right on two grounds.  First, the United States has an unconditional statutory right to intervene.  *See* Fed. R. Civ. P. 24(a)(1); 42 U.S.C. § 2000h-2.  Second, the United States may intervene as of right because it has significant interests that may, as a practical matter, be impeded by disposition of this case

1

and cannot be adequately represented by the other parties.  *See* Fed. R. Civ. P. 24(a)(2).

Furthermore, given that this action was filed only recently, the United States' motion is timely.  *Id.*

In the alternative, the United States satisfies the requirements of Fed. R. Civ. P. 24(b) for

permissive intervention and respectfully moves for an order granting its request under that

provision.  The Proposed Complaint in Intervention ("Complaint") is attached hereto as Exhibit 1.

## II.    BACKGROUND

MSHSAA is "a voluntary, nonprofit, educational association of secondary schools

established for the purpose of working collaboratively to develop and adopt standards of

supervision and administration to regulate the diverse interscholastic activities and contests which

are delegated by the member schools to the jurisdiction of the Association."  MSHSAA Const. art.

II, § 2.  *See* ECF 1, Ex. A at 20, PageID #45.  MSHSAA's members are Missouri's public and

private schools.  MSHSAA's membership numbers in the hundreds of schools.[1]  Member schools

must renew their membership each year and pay an annual fee.  MSHSAA employes more than

fifteen people and these employees are eligible to participate in Missouri's state-retirement system

on the same terms as other public employees in the state.

MSHSAA is governed by a ten-member Board of Directors.  MSHSAA Const. art. IV, §§

2, 6.  See ECF 1, Ex. A at 24 and 26, PageID #49 and #51.  Board members are elected by

MSHSAA's member schools, which are represented by their principals and superintendents.  *Id.*

art. IV, § 3.a; art. VI, § 2.  Eight of the directors (each of whom must be a superintendent, a

---

[1] Some schools are registered as "affiliate schools" which limits their ability to participate in certain interscholastic competitions.  *See* MSHSAA Const. art. III, § 6.  See ECF 1, Ex. A at 23, PageID #48.  Many of these affiliate members are also public schools.  Additionally, affiliate membership is open to homeschooling associations.  *See* Member School Listing, MSHSAA, https://tinyurl.com/58524c3a (last visited Feb 13, 2026).

2

principal, or an activities director of a member school) are elected on the basis of geography—one from each membership district.  *Id.* art. IV, § 2.b.  Two additional directors are elected on an at-large basis.  *Id.* art. IV, §2.b.2.  At-large members must meet the same qualification as district-based members, except that each of the at-large seats is reserved for "a candidate representing the under-represented gender of the current Board, or an under-represented ethnicity."[2]  It is unclear whether Board members receive any compensation for their service on the Board.

Dr. Merlyn Johnson— the Superintendent of Cassville R-IV School District—was nominated for one of MSHSAA's Board of Directors at-large seats.  He satisfied all of the criteria for election to the Board, but his candidacy was rejected on the basis that he was a Caucasian, non-Hispanic male.  State of Missouri, acting through its Attorney General, and Dr. Johnson brought suit against MSHSAA alleging racial and sex discrimination in violation of 42 U.S.C. § 1983 (Count 1); the Fourteenth Amendment (Count 2); 42 U.S.C. §2000e-5(f) (Count 3); and 42 U.S.C. § 1981 (Count 4).

The United States Attorney General has reviewed this action and determined it is a case of general public importance.  This case will provide relief to the Plaintiff but will also relieve other potential candidates for the MSHSAA Board from the "injury," of "being forced to compete in a race-based system that may prejudice the[m]."  *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007).

---

[2] MSHSAA's constitution does not define "ethnicity," but based on the correspondence from the Board (discussed below) it appears to include only the "Hispanic"/"non-Hispanic" distinction.

## III.    ARGUMENT

### A.  The United States Has an Unconditional Statutory Right to Intervene

The United States' Motion to Intervene should be granted under Fed. R. Civ. P. 24(a)(1) because Section 902 of the 1964 Civil Rights Act, codified at 42 U.S.C. § 2000h-2, confers on the United States an unconditional right to intervene in this action. Section 902 provides:

> Whenever an action has been commenced in any court of the United States seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, sex or national origin, the Attorney General for or in the name of the United States may intervene in such action upon timely application if the Attorney General certifies that the case is of general public importance. In such action the United States shall be entitled to the same relief as if it had instituted the action.

42 U.S.C. § 2000h-2.  This action claims that the MSHSAA's policies with regard to eligibility for the Board's at-large seats violate equal protection based on race, color, national origin, and/or sex. ECF 1 ¶¶ 126-134.  Furthermore, the United States Attorney General has certified that this case is of "general public importance."  *See* Certificate of the Attorney General, attached as Exhibit 2. Once these statutory prerequisites are met, the "right to intervention by the United States . . . is an absolute and not a permissive one." *Spangler v. United States*, 415 F.2d 1242, 1244 (9th Cir. 1969); *see also Melendres v. Skinner*, 113 F.4th 1126, 1129 n.3 (9th Cir. 2024).  Furthermore, as explained in Section III.B.1 *infra*, the United States' motion is timely.

### B.  The United States May Intervene as of Right Under Fed. R. Civ. P. 24(a)(2).

The United States' motion to intervene should also be granted as of right under Fed. R. Civ. P. 24(a)(2).  Under this rule, "[a] third party is entitled to intervention of right if (1) its motion is timely, (2) it has an interest in the subject matter of the litigation, (3) disposition of the case may impair that interest, and (4) existing parties do not adequately protect that interest." *Entergy Arkansas, LLC v. Thomas*, 76 F.4th 1069, 1071 (8th Cir. 2023).  While the applicant has the burden

4

to show each element, "Rule 24 should be construed liberally, with all 'doubts resolved in favor of the proposed intervenor.'" *Nat'l Parks Conservation Ass'n v. U.S. EPA*, 759 F.3d 969, 975 (8th Cir. 2014) (quoting *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d. 1080, 1081 (8th Cir. 1999)).

### 1. The United States' Motion is Timely.

First, there can be no reasonable dispute that the United States' motion is timely. Timeliness focuses on "four factors: '(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties.'" *United Food & Com. Workers Union, Loc. No. 663 v. USDA*, 36 F.4th 777, 780 (8th Cir. 2022) (quoting *Smith v. SEECO, Inc.*, 922 F.3d 398, 405 (8th Cir. 2019)). Each of these factors weighs in favor of granting intervention here. This action was filed on February 4, 2026, and the United States moved to intervene approximately two months later. Accordingly, this litigation is at an early stage, with no discovery or dispositive motions, and no response to the initial complaint. There has been no delay and, consequently, no prejudice to the other parties.

### 2. The United States Has a Significant Protectable Interest in This Action.

The United States has a significant protectable interest in ensuring that state and local programs do not violate the Fourteenth Amendment. "The requirement of a significantly protectable interest is generally satisfied when the interest is protectable under some law, and there is a relationship between the legally protected interest and the claims at issue." *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) (quotation and alteration marks omitted). This interest need not rise to the level required for Article III standing, provided that at least one party has standing and the proposed intervenor does not "pursue[] relief that is broader than or different

5

from the party invoking a court's jurisdiction." *Little Sisters of the Poor Sts. Peter and Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020). Plaintiff and the United States both seek to enjoin the MSHSAA's policies under the Equal Protection Clause of the Fourteenth Amendment.

It is well settled that "the United States suffers a concrete harm to its sovereignty when its laws are violated." *La Unión del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 526 (W.D. Tex. 2022). *Accord Vt. Agency of Natural Res. v. United States*, 529 U.S. 765, 771 (2000) (United States suffers an "injury to its sovereignty arising from violation of its laws"). Furthermore, as multiple courts have held, "the United States' sovereign interests are harmed when its laws are violated." *United States v. Idaho*, 623 F. Supp. 3d 1096, 1107 (D. Idaho 2022). *See also United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("The United States suffers injury when its valid laws in a domain of federal authority are undermined by impermissible state regulations."); *United States v. Iowa*, 737 F. Supp. 3d 725, 749 (S.D. Iowa 2024), *aff'd as modified sub nom. Iowa Migrant Movement for Just. v. Bird*, 157 F.4th 904 (8th Cir. 2025) (same).

Congress has passed a statute to enforce the rights set forth in the Fourteenth Amendment. 42 U.S.C. § 1983. It has also authorized the Attorney General to intervene in such suits via Section 902 of the 1964 Civil Rights Act. 42 U.S.C. § 2000h-2. Numerous courts have found that the Attorney General's sovereign interest in enforcing the Fourteenth Amendment is strong enough to support Article III standing, which exceeds what Rule 24(a)(2) requires. *See United States v. City of Jackson*, 318 F.2d 1, 14-17 (5th Cir. 1963) ("When a State, . . . by a law or pattern of conduct, takes action motivated by a policy which collides with national policy as embodied in the Constitution, the interest of the United States 'to promote the interest of all' gives it standing to challenge the State in the courts."). The United States therefore has a "significant protectable interest" in this litigation.

### 3.    Disposition of This Case May Impede the United States' Interests.

The United States' ability to protect the substantial legal interest described above would, as a practical matter, be impaired absent intervention in this case. The long-standing Eighth Circuit rule is that a petitioner has an absolute right to intervene where he "is asserting a right which would be lost or substantially affected if it could not be asserted at that time and in that form." *Whittaker v. Brictson Mfg. Co.*, 43 F.2d 485, 489 (8th Cir. 1930). *See also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (citing Fed. R. Civ. P. 24 advisory committee notes).

The outcome of this case, including the potential for appeals by existing parties, implicates *stare decisis* concerns that warrant the United States' intervention. *See Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1308-09 (8th Cir. 1995) (holding that this "requirement is met by a minimal showing that representation 'may be' inadequate," and that "[w]here [parties'] interests are disparate, even though directed at a common legal goal, e.g., the avoidance of liability, intervention is appropriate.").

### 4.    The United States' Interests Are Not Adequately Represented.

Finally, the United States' interests in this litigation are not adequately represented by the existing parties to the case. "A proposed intervenor typically need only 'carry a minimal burden of showing that their interests are inadequately represented by the existing parties.'" *Nat'l Parks*, 759 F.3d at 976 (quoting *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 999 (8th Cir. 1993). "The inadequate representation condition is satisfied if the proposed intervenor shows that the representation of its interests by the current party or parties to the action may be inadequate. … Doubts regarding the propriety of permitting intervention should be resolved in favor of allowing it, because this serves the judicial system's interest in resolving all related controversies in a single action." *Sierra Club v. Robertson*, 960 F.2d 83, 85-86 (8th Cir. 1992).

7

The existing parties cannot adequately represent the United States' interests because no private party may adequately represent the United States' sovereign interest in ensuring enforcement of fundamental rights under the Constitution. "[T]he United States has an interest in enforcing federal law that is independent of any claims of private citizens." *United States v. E. Baton Rouge Sch. Dist.*, 594 F.2d 56, 58 (5th Cir. 1979); *see also EEOC v. Pemco Aeroplex*, 383 F.3d 1280, 1291 (11th Cir. 2004) ("Quite simply, it is so unusual to find privity between a governmental agency and private plaintiffs because governmental agencies have statutory duties, responsibilities, and interests that are far broader than the discrete interests of a private party."). Thus, "[a]ggrieved individuals . . . lack the required 'identity of interests' with government agencies." *Acosta v. Idaho Falls Sch. Dist. No. 91*, 291 F. Supp.3d 1162, 1168 (D. Idaho 2017). And absent "identical" interests, there can be no "adequate representation" under Fed. R. Civ. P. 24(a)(2). *See Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 195-196 (2022) (rejecting a presumption that the state board of elections adequately represented state legislators' interests merely because they were "related" to the board's interests). Accordingly, the United States meets this requirement for intervention.

C. *The United States Meets the Permissive Intervention Standard Under Fed. R. Civ. P. 24(b).*

Alternatively, this Court should permit the United States to intervene because the United States meets the requirements for permissive intervention under Rule 24(b), which provides as follows:

> **(1) *In General.*** On timely motion, the court may permit anyone to intervene who:
>
>   . . .
>
> **(B)** has a claim or defense that shares with the main action a common question of law or fact.
>
>   . . .

8

**(3)** ***Delay or Prejudice.*** In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).

Here, Plaintiffs assert an Equal Protection claim regarding race-based discrimination. The United States also alleges an Equal Protection claim, namely that Defendant engaged in intentional discrimination on the basis of race, color, or national origin, in violation of the Equal Protection Clause. The United States' claim shares common questions of law and fact with Plaintiffs' claims. Indeed, the United States' proposed Complaint in Intervention largely tracks the substance of Plaintiffs' Complaint. As explained in Section III.B.1 *supra*, the United States' motion is timely and will not unduly delay or prejudice the adjudication of the original parties' rights. All other "relevant factors" the court may consider, weigh in favor of the government's intervention in a case involving a state-wide athletic association's policies that classify and discriminate against individuals on the basis of race, national origin, and/or sex. *See S. Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003).

## IV. CONCLUSION

For the foregoing reasons, United States' motion to intervene should be granted.

9

DATED: April 2, 2026

Respectfully submitted,

THOMAS C. ALBUS
United States Attorney
Eastern District of Missouri

HARMEET K. DHILLON
Assistant Attorney General

JESUS A. OSETE
Principal Deputy Assistant Attorney General

ERIC SELL
Deputy Assistant Attorney General

*/s/ Anthony J. Debre*
ANTHONY J. DEBRE #67612MO
Assistant United States Attorney

*s/ Gregory Dolin*
GREGORY DOLIN (DC No. 497455)
Senior Counsel

United States Attorney's Office
111 South Tenth Street, 20th Floor
St. Louis, MO 63102
Phone: (314) 539-2200
E-mail: anthony.debre@usdoj.gov

Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 598-9251
Email: gregory.dolin@usdoj.gov

ATTORNEYS FOR INTERVENOR-PLAINTIFF
UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 2, 2026, a true and accurate copy of the foregoing was filed via this Court's CM/ECF system, and therefore served on all parties of record.

/s/ *Anthony J. Debre*
ANTHONY J. DEBRE
Assistant United States Attorney