**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **STATE OF MISSOURI ex rel.**<br>**CATHERINE L. HANAWAY,**<br>**ATTORNEY GENERAL OF MISSOURI,**<br><br>**&**<br><br>**MERLYN JOHNSON,**<br><br>　　**Plaintiffs,**<br><br>**v.**<br><br>**MISSOURI STATE HIGH SCHOOL**<br>**ACTIVITIES ASSOCIATION,**<br><br>　　**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)　**Case No.  4:26-cv-00171-SRC**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR
IMPROPER VENUE OR IN THE ALTERNATIVE TO TRANSFER,
TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION,
AND TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

Defendant Missouri State High School Activities Association ("MSHSAA" or "the Association"), by and through undersigned counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6), 28 U.S.C. § 1404(a), and 28 U.S.C. § 1406(a), respectfully requests that this Court dismiss Plaintiffs' Complaint for improper venue, or, in the alternative, transfer this action to the United States District Court for the Western District of Missouri; dismiss the State of Missouri with prejudice for lack of subject matter jurisdiction; and dismiss certain claims with prejudice for failure to state a claim upon which relief can be granted.

1

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................6

COMPLAINT.......................................................................................................................9

ARGUMENT.....................................................................................................................10

    I.     Motion to Dismiss for Improper Venue ...............................................................10

        A.  MSHSAA does not reside in the Eastern District of Missouri for venue purposes .....11

            i.    The Court lacks general jurisdiction over MSHSAA............................................11

            ii.    The Court lacks specific jurisdiction over MSHSAA..........................................14

        B.  A substantial part of the events or omissions giving rise to the claim did not occur in the Eastern District of Missouri.....................................................................................18

        C.  Section 1391(b)(3) does not apply because this action could have been brought in the Western District of Missouri ...................................................................................18

    II.    Motion to Transfer Venue....................................................................................19

        A.  The convenience of the parties and witnesses favors transfer ........................................19

        B.  The interests of justice favor transfer......................................................................21

    III.   Motion to Dismiss the State as a Plaintiff for Lack of Subject Matter Jurisdiction.............22

        A.  The State has not alleged a concrete, particularized injury to a substantial segment of its population ......................................................................................................23

        B.  The State has not alleged a quasi-sovereign interest separate and distinct from Dr. Johnson's individual claims...............................................................................23

        C.  Missouri's reliance on Snapp's "stigmatization" language is misplaced..........................25

        D.  The presence of a named individual does not cure the State's standing defects ...........25

    IV.   Motion to Dismiss for Failure to State a Claim..........................................................26

        A.  The State fails to state a claim in Count III (Title VII) .......................................27

            i.    The State is not authorized to sue under Title VII..............................................27

             ii.    The State failed to exhaust mandatory administrative remedies........................28

B.  The State and Dr. Johnson fail to state a claim in Count IV (42 U.S.C. § 1981)...........29

   i.    Plaintiffs cannot maintain a freestanding Section 1981 claim............................29

   ii.   Section 1981 does not reach sex discrimination ....................................................30

   iii.  Plaintiffs fail to allege a specific law or proceeding of which they were denied the full and equal benefit ........................................................................................30

CONCLUSION...................................................................................................................................32

**TABLE OF AUTHORITIES**

**Cases**

*Aldrich v. National Collegiate Athletic Association*, 484 F. Supp. 3d 779 (N.D. Cal. 2020) ................. 13, 17

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982) ........................... 22, 23, 24, 25

*Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1179 (8th Cir. 1998) ............................. 29

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 26

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49 (2013) ............................. 10, 19

*Aziz v. FedEx Ground Package System, Inc.*, 2019 WL 636972 (E.D. Tex. Feb. 14, 2019) ............... 31, 32

*Belaustegui v. KC Media LLC*, 2020 WL 4805075 (E.D. Mo. Aug. 17, 2020) .................................... 10, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 26

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 582 U.S. 255 (2017) ........................ 11, 14

*Buckler v. United States*, 919 F.3d 1038 (8th Cir. 2019) ............................................................ 22

*Burkemper v. Dedert Corp.*, 2011 WL 5330645 (E.D. Mo. Nov. 7, 2011) ........................................ 20

*Butler v. Crittenden County, Ark.*, 708 F.3d 1044 (8th Cir. 2013) ................................................ 30

*Carfagna v. Fisher Island Club, Inc.*, 796 F. Supp. 3d 1178 (S.D. Fla. 2025) ................................ 31

*Chapman v. Higbee Co.*, 319 F.3d 825 (6th Cir. 2003) ......................................................... 30, 31

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .............................................................. 22

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ...................................................................... 12, 14

*Dallas Texans Soccer Club v. Major League Soccer Players Union*, 247 F. Supp. 3d 784 (E.D. Tex. 2017) ...13

*EEOC. v. CVS Pharmacy, Inc.*, 809 F.3d 335 (7th Cir. 2015) ...................................................... 29

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ...................................... 12

*Hagin v. Allstate Vehicle and Prop. Ins. Co.*, 2026 WL 593342 (W.D. Mo. Mar. 3, 2026) ................... 20

*Houlihan Trading Co. v. CTI Foods, LLC*, 2021 WL 5758436 (E.D. Mo. Dec. 3, 2021) ...................... 19

*In re Apple, Inc.*, 602 F.3d 909 (8th Cir. 2010) ..................................................................... 21

*In re Nat'l Hockey League Players' Concussion Injury Litig.*, 2019 WL 5079980 (D. Minn. Oct. 10, 2019)12, 13

*Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304 (11th Cir. 2010) ................................................ 31

*Judie v. Hamilton*, 872 F.2d 919 (9th Cir. 1989) .................................................................. 31, 32

*Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928 (8th Cir. 2023) ...................... 14

*Kick Int'l, Inc. v. Brown*, 2020 WL 409110 (E.D. Mo. Jan. 24, 2020) ............................................ 14

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588 (8th Cir. 2011) ....................................... 14

*Love v. Pullman Co.*, 404 U.S. 522 (1972) ........................................................................... 28

*Massachusetts v. EPA*, 549 U.S. 476 (2007) ..................................................................... 22, 23

*Miller v. Nippon Carbon Co.*, 528 F.3d 1087 (8th Cir. 2008) ...................................................... 14

*Missouri v. Starbucks Corp.*, 2026 WL 309714 (E.D. Mo. Feb. 5, 2026) ........22, 23, 24, 25, 27, 28, 29, 30

*Moore v. Compass Group USA, Inc.*, 2023 WL 7696811 (E.D. Mo. Nov. 15, 2023) .......................... 20, 21

*Onyiah v. St. Cloud State University*, 5 F.4th 926 (8th Cir. 2021) ................................................ 29

*Ortho Solutions, LC v. Sanchez*, 2019 WL 2450966, (E.D. Mo. June 12, 2019) ................................ 10

*People of State of N.Y. by Abrams v. Holiday Inns, Inc.*, 656 F. Supp. 675 (W.D.N.Y. 1984) ............. 29

*PHH Mortgage Corp. v. Barrett, Daffin, Frappier, Treder & Weiss, LLP*, 2016 WL 1588270 (N.D. Cal. Apr. 20, 2016) ................................................................................................11

*Phillip v. University of Rochester*, 316 F.3d 291 (2d Cir. 2003) .........................................31

*Quaintance v. City of Columbia*, 2017 WL 168462 (E.D. Mo. Jan. 17, 2017) ....................18

*Shannon v. Ford Motor Co.*, 72 F.3d 678 (8th Cir. 1996)....................................................28

*Sightpath Med. Servs., LLC v. Terry*, 2015 WL 362662 (E.D. Mo. Jan. 27, 2015) .............10

*Spanier v. Am. Pop Corn Co.*, 2016 WL 1465400 (N.D. Iowa Apr. 14, 2016)................. 10, 11

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .......................................................................22

*Terra Int'l, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688 (8th Cir. 1997)...................19

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589 (8th Cir. 2011)....................11

*Wyatt Bury, LLC v. City of Kansas City*, 804 F. Supp. 3d 939 (W.D. Mo. 2025)................24

*Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851 (8th Cir. 2001) .............................31

## Statutes

28 U.S.C. § 1391 ................................................................................. 10, 11, 13, 18

28 U.S.C. § 1404(a) ......................................................................................19

28 U.S.C. § 1406(a) ................................................................................. 10, 19

42 U.S.C. § 1981(a) ......................................................................................30

42 U.S.C. § 2000e-5 ................................................................................. 27, 28

42 U.S.C. § 2000e-6 ......................................................................................28

Mo. Rev. Stat. § 115.619(1), RSMo ................................................................7

Mo. Rev. Stat. § 37.020, RSMo .......................................................................7

## Other Authorities

14D Charles Alan Wright, Fed. Prac. & Proc. § 3812 (4th ed.) ...........................11

EEOC, Commission Opinion Letter: Section 707 (Sep. 3, 2020), https://www.eeoc.gov/laws/guidance/commission-opinion-letter-section-707 ...........29

## Rules

Fed. R. Civ. P. 12(b)(1)................................................................................26

Fed. R. Civ. P. 12(b)(3)................................................................................10

Fed. R. Civ. P. 12(b)(6)................................................................................26

Mo. Sup. Ct. R. 7.03(d)..................................................................................8

## Regulations

1 CSR 10-17.050.............................................................................................7

**INTRODUCTION**

Diversity is not discrimination; inclusion is not exclusion.

At its core, this case concerns an organization serving more than 200,000 Missouri students, teenagers whose opportunities are shaped by a governing body that cannot function fairly without reflecting the diversity of those it serves. A governing body making those decisions cannot operate in the abstract; it must reflect the students it serves.

MSHSAA is a private, voluntary, nonprofit association of public, private, charter, religious, and parochial schools across Missouri, dedicated to instilling a system of values in students. It serves students from every community: urban, suburban, and rural, and from every corner of the State. These include students who participate in one sport or multiple sports, as well as those engaged in activities such as theater, debate, and music. They are girls and boys of different races, national origins, abilities, and faiths. MSHSAA's commitment to inclusion reflects the students it serves and fulfills its mission to promote participation, sportsmanship, teamwork, and personal excellence. A homogeneous board is fundamentally inconsistent with, and undermines, the very principles of equal opportunity and fair representation that MSHSAA is charged with advancing for the diverse student population it serves.

MSHSAA is governed by a Constitution and By-Laws adopted by its member institutions, which voluntarily affiliate with the Association each year. Authority is vested in a ten-member Board of Directors elected by member schools. Eight members are elected from geographic regions to ensure statewide representation, and two members are elected at-large to include perspectives not otherwise represented from the current Board.

The provision is inherently dynamic, operating as a rotating mechanism that responds to the Board's composition and *expands participation rather than restricts it*. Like geographic representation models, it prevents gaps in representation and helps ensure the Board reflects the diverse student population it serves by creating two more seats at the table (out of 10), not by removing or restricting

access to existing ones. The collective decision of all member schools of MSHSAA affirmatively creates pathways for diverse voices to be included at the decision-making table.

MSHSAA's approach to representative diversity and inclusion mirrors a similar approach adopted by all three branches of the Missouri government. Indeed, Missouri law reflects a consistent and deliberate policy choice to ensure that historically underrepresented groups (including individuals identified by race and sex) have a meaningful presence in the economic, governmental, and professional structures of the State.

The Legislative Branch expressly directs the State to "increase and maintain participation" of minority- and women-owned businesses in state contracts. Mo. Rev. Stat. 37.020. Far from being merely aspirational, that directive is implemented through formal certification programs for Minority Business Enterprises (MBEs) and Women's Business Enterprises (WBEs), statewide participation goals, and oversight mechanisms designed to ensure accountability and measurable inclusion. The Legislature has also required gender-balanced leadership in political committee structures, mandating that key officer roles be held by both men and women. Mo. Rev. Stat. § 115.619.1.[1]

The Executive Branch expressly establishes programs designed to "encourage and facilitate" the utilization of minority-and women-owned businesses and to ensure they have the "maximum opportunity to participate" in state-funded procurements. 1 CSR 10-17.050. These regulations

---

[1] Section 115.619.1 is titled "Composition of legislative, congressional, senatorial, and judicial district committees" and reads as follows (emphasis added):

1.  A legislative district committee shall consist of the precinct, ward, or township committeeman and committeewoman from such precincts, wards, or townships included in whole or in part of the legislative district. *There shall be elected from the membership of each legislative district committee a chairman and a vice chairman, one of whom shall be a woman and one of whom shall be a man,* and each legislative district at the same time shall elect a secretary and a treasurer, one of whom shall be a woman and one of whom shall be a man, but who may or may not be members of the legislative district committee. Party state committees may provide for voting by proxy and for weighted or fractional voting.

mandate outreach to minority- and women-owned businesses and require that evaluation and procurement processes include diverse representation.

The Judicial Branch expressly requires that the Board of Governors of The Missouri Bar include members who "represent diverse elements of the bar," including diversity in age, race, gender, sexual orientation, disability, geography, and areas of practice. Mo. Sup. Ct. R. 7.03(d).[2] The Court embeds diversity directly into the composition of the governing body, making clear that representation is not optional, but essential to the legitimacy and effectiveness of the professional institution.

Taken together, these statutes, regulations, and institutional structures reflect a clear and consistent principle: Missouri does not treat diversity as incidental. It recognizes diversity, including representation based on race and sex, as a substantive public good. Across all three branches of government, the State has chosen to promote inclusion not by excluding others, but by intentionally expanding participation to ensure that a broader range of voices is heard, considered, and reflected in its decisions.

---

[2] Rule 7.03 reads as follows (emphasis added):

The Board of Governors shall consist of:

(a)  The last retiring president of The Missouri Bar who shall be a member for one year immediately following the date of his retirement as president of The Missouri Bar.

(b)  A member of The Missouri Bar who shall be not older than 34 years of age on October 1 of the year of his election. He shall be elected as representative of the young lawyers of the state for a two-year term in each even-numbered year commencing in 1974. The said member shall be elected in a manner prescribed by the Board of Governors, which may delegate to the Young Lawyers Section the authority to elect said member.

(c)  Forty members of The Missouri Bar who, when nominated and elected, shall be enrolled in the district from which they are elected. The members shall be elected from separate districts as follows:

(d)  *Three additional members of The Missouri Bar who have unique experience and knowledge or who represent diverse elements of the bar within the state of Missouri including, but not limited to, age, race, gender, sexual orientation, disability, geography, and areas and types of practice.* These members will be elected as determined by the Board of Governors.

The State of Missouri cannot claim that MSHSAA's governance structure is unlawful without ignoring its own deliberate, longstanding commitment to inclusive and diverse participation as a matter of public policy. Nor may it misapply equal protection principles by conflating inclusion with exclusion, or diversity with discrimination. The State cannot compel a private, voluntary association to alter the composition of its governing body in a manner that interferes with its ability to fulfill its mission.

As argued below, the entire Complaint should be dismissed for improper venue. If the case is to continue, the proper venue is the Western District and the proper parties should be Plaintiff Johnson and Defendant MSHSAA. The State of Missouri cannot participate in this case for lack of subject matter jurisdiction, and Counts III and IV should be dismissed in their entirety with prejudice as to all parties for failure to state a viable or permissible claim.

## COMPLAINT

Plaintiffs' Complaint concerns MSHSAA's constitutional provision requiring the two "At-Large" positions on the Board of Directors to be "filled by a candidate representing the under-represented gender of the current Board, or an under-represented ethnicity." Doc. [1] ¶ 76. Plaintiff Merlyn Johnson ("Dr. Johnson") alleges that he was nominated for the At-Large Region 2 seat on the Board of Directors in 2025. According to the Complaint, "at the time of Dr. Johnson's nomination, MSHSAA's Board had a majority of male and white, non-Hispanic members." *Id.* ¶ 31. Because of the Board's composition, Dr. Johnson alleges MSHSAA rejected his candidacy for the At-Large Region 2 seat.

Dr. Johnson (along with the State of Missouri, asserting a "quasi-sovereign interest in the health and wellbeing—both physical and economic—of its residents in general") brings a four-count Complaint against MSHSAA arising from Dr. Johnson's candidacy for the At-Large Region 2 seat.

## ARGUMENT

### I.    Motion to Dismiss for Improper Venue[3]

"FRCP 12(b)(3) and 28 U.S.C. § 1406(a) authorize dismissal when venue is 'wrong' or 'improper' in the forum in which suit was brought." *Sightpath Med. Servs., LLC v. Terry*, 2015 WL 362662, at *2 (E.D. Mo. Jan. 27, 2015) (citing *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013)). Whether venue is proper is governed by 28 U.S.C. § 1391(b). *Id.*

> Under Section 1391(b), a civil action may be brought in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

§ 1391(b).

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)." *Atl. Marine*, 571 U.S. at 56. "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Id.* A court reviewing a motion to dismiss under Rule 12(b)(3) may consider matters outside the pleadings. *Ortho Solutions, LC v. Sanchez*, 2019 WL 2450966, at *4 (E.D. Mo. June 12, 2019); *Belaustegui v. KC Media LLC*,

---

[3] A court reviewing a motion to dismiss under Rule 12(b)(3) may consider matters outside the pleadings. *Ortho Solutions, LC v. Sanchez*, 2019 WL 2450966, at *4 (E.D. Mo. June 12, 2019); *Belaustegui v. KC Media LLC*, 2020 WL 4805075, at *2 n. 1 (E.D. Mo. Aug. 17, 2020); *Spanier v. Am. Pop Corn Co.*, 2016 WL 1465400, at *10 (N.D. Iowa Apr. 14, 2016) (citing cases). As such, Defendant provides evidence in support of its Motion to Dismiss for Improper Venue pursuant to FRCP 12(b)(3) and Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). Such evidence is not being offered by Defendant in support of — and is not cited in any manner as part of argument in favor of — its Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim pursuant to FRCP 12(b)(1) & (6).

2020 WL 4805075, at *2 n. 1 (E.D. Mo. Aug. 17, 2020); *Spanier v. Am. Pop Corn Co.*, 2016 WL 1465400, at *10 (N.D. Iowa Apr. 14, 2016) (citing cases).

### A. *MSHSAA does not reside in the Eastern District of Missouri for venue purposes.*

For venue purposes, an entity such as MSHSAA is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." § 1391(c)(2) . In a state with more than one judicial district, such as Missouri, the entity "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . . ." § 1391(d) ; *see PHH Mortgage Corp. v. Barrett, Daffin, Frappier, Treder & Weiss, LLP*, 2016 WL 1588270, *1 n. 1 (N.D. Cal. Apr. 20, 2016) ("Although Section 1391(d) specifically refers to 'corporations,' the prior combination of texts now found in Sections 1391(d) and (c)(2) suggests that Section 1391(d) should be applied to other entities for whom venue was historically analyzed analogously with corporations."); 14D Charles Alan Wright, Fed. Prac. & Proc. § 3812 (4th ed.) ("Because courts had long equated the residence of corporate and unincorporated associations, and because Congress gave no indication of a desire to change that equivalence—indeed, quite the opposite—Section 1391(d) should be applied to unincorporated associations.").

Thus, the first question before the Court is whether MSHSAA's contacts with the Eastern District of Missouri would be sufficient to subject MSHSAA to personal jurisdiction if the Eastern District of Missouri was its own State.

### i. **The Court lacks general jurisdiction over MSHSAA.**

"Personal jurisdiction can be specific or general." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different state." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 582 U.S. 255, 262 (2017). There are "only a limited

set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."

*Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

For a corporation, the inquiry is whether the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 139 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A corporation's "place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* at 137 (citation modified). Pursuant to *Daimler*, then, the question is whether MSHSAA's contacts with the Eastern District are so continuous and systematic that it is "fairly regarded as at home" here. *See In re Nat'l Hockey League Players' Concussion Injury Litig.*, 2019 WL 5079980, at *3 (D. Minn. Oct. 10, 2019) (applying *Daimler* standard to NHL, an unincorporated association).

MSHSAA is headquartered and maintains its principal place of business in Columbia, Missouri, which lies within the Western District of Missouri. *See* Exhibit 1, ¶ 4. The Association's sole office is located in Columbia, Missouri, where all full-time staff work. *Id.*, ¶¶ 4, 5. Records maintained since the Association's founding are stored at the Columbia office. *Id.*, ¶ 6. The Association also stores its real property, including cars and trailers, at its Columbia headquarters. *Id.*, ¶ 7. At this sole office location in Columbia:

- MSHSAA staff carry out all of the Association's day-to-day operations and governance functions, including entering into contracts on behalf of the Association and producing and managing its official podcast.

- The Board of Directors holds four of its seven regularly scheduled meetings. Of the other three Board meetings, one is held virtually and two are held at locations away from Columbia but still within the Western District of Missouri (Osage Beach, Missouri, and St. Joseph, Missouri). And the virtual meeting is hosted and administered from the Columbia location.

- All Appeals Committee and other committee meetings are conducted (absent rare emergency circumstances which might require a virtual session).

*Id.*, ¶¶ 8-12.

12

By contrast, MSHSAA has no headquarters, offices, or centralized administrative operations in the Eastern District of Missouri. *Id.*, ¶ 13. It does not maintain staff, records, or principal operations there. *Id.*, ¶ 14. The mere fact that member schools are located throughout Missouri (including within the Eastern District) does not render the Association "at home" in that judicial district.

Courts applying *Daimler* have repeatedly rejected the argument that the presence of numerous members or affiliates in a forum makes a multi-member association "at home" there. In *Aldrich v. National Collegiate Athletic Association*, the NCAA, an unincorporated association headquartered in Indiana, was not "fairly regarded as at home" in California despite having fifty-eight members in the state. 484 F. Supp. 3d 779, 792-93 (N.D. Cal. 2020). Likewise, in *Dallas Texans Soccer Club v. Major League Soccer Players Union*, the Players Union, an unincorporated association with offices in Maryland, was not "at home" in Texas even though it met with players in Texas and represented fifty-nine players in Texas. 247 F. Supp. 3d 784, 788-89 (E.D. Tex. 2017). And in *In re NHL Players' Concussion Injury Litigation*, the NHL, an unincorporated association headquartered in New York, was not "at home" in Minnesota despite having a franchised club and team in the state. 2019 WL 5079980, at *4 (D. Minn. Oct. 10, 2019).

These cases confirm that an association is not "at home" in every state where it has members. This principle applies with equal force in the venue context. To determine where MSHSAA "resides" for purposes of the venue statute, the Court must evaluate MSHSAA's contacts with the Eastern District as if that district were a separate state. *See* § 1391(d) . When viewed through that lens, the presence of member schools in the Eastern District cannot establish that MSHSAA is "at home" there. Otherwise, any statewide association would effectively reside in every judicial district in which it has members, eliminating the district-specific inquiry required by Section 1391(d).

Because MSHSAA is not "at home" in the Eastern District of Missouri, this Court does not have general jurisdiction over MSHSAA for purposes of determining where it "resides" under Section 1391(b).[4]

### ii.    The Court lacks specific jurisdiction over MSHSAA.

"If a court does not have power over a defendant for all claims, it may have power over it with regard to specific claims, because of the relationship between the defendant, the forum, and the litigation." *Kick Int'l*, 2020 WL 409110, at *3 (citing *Daimler*, 571 U.S. at 133). But specific jurisdiction exists only when the plaintiff's claims "arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers Squibb*, 582 U.S. at 262 (citation modified).

"The Eighth Circuit has identified five factors to analyze when determining if a defendant has a substantial connection with a forum state: (1) the nature and quality of the contacts with the forum state; (2) quantity of the contacts, (3) relation of the cause of action to those contacts, (4) interest of the forum state in providing a forum for its residents, and (5) convenience of the parties." *Kick Int'l*, 2020 WL 409110, at *3 (citing *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011)). The first three factors "carry[ ] the greatest weight." *Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928, 930 (8th Cir. 2023).

Under these factors, this Court lacks specific jurisdiction over MSHSAA because Plaintiffs' claims do not arise out of or relate to MSHSAA's contacts with the Eastern District. As explained above, MSHSAA is "at home" in Columbia, Missouri, with all of its governance, operations, and management occurring within the Western District of Missouri. *See* Exhibit 1, ¶¶ 4-14.

---

[4] "A federal court may exercise jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (citation modified). "[B]ecause the Missouri long-arm statute authorizes personal jurisdiction to the extent permissible under the Due Process Clause, a finding that a plaintiff has failed to establish personal jurisdiction comports with the Due Process Clause is dispositive in Missouri cases and eliminates the need for a long-arm inquiry." *Kick Int'l, Inc. v. Brown*, 2020 WL 409110, at *3 (E.D. Mo. Jan. 24, 2020).

MSHSAA's constitutional amendment process further illustrates that its decision-making occurs outside the Eastern District. Proposed amendments to the Association's Constitution primarily follow a multi-step process involving statewide area meetings, an online questionnaire, and ultimately a ballot made available to member schools through the MSHSAA website. ¶ 15(a).

- A proposal for an amendment must obtain prior approval from the Board of Directors before it can be presented to the statewide area meetings.

- The Board considers and approves such matters during its meetings which occur in the Western District of Missouri.

- After the close of voting by member schools, a MSHSAA staff member located at the Columbia headquarters collects the votes submitted through the website and presents the results to the Board.

- The Board then certifies the results at its in-person June meeting in Columbia.

¶¶ 15(a)-(e). Accordingly, the official actions that complete and give effect to constitutional amendments occur in the Western District.

Similarly, the official actions that completed and gave effect to the specific constitutional provision challenged in this case by Plaintiffs also occurred in the Western District.

- The constitutional provision challenged by Plaintiffs was first brought before the Board of Directors for discussion at a meeting held on April 4-5, 2003, at the Lake of the Ozarks in the Western District of Missouri.

- At this meeting, the Board discussed the concept and directed staff to "come up with a proposal to bring diversity to the Board and present this to the Board at a future meeting."

- Pursuant to that direction, MSHSAA staff working from the Columbia office prepared the proposal for consideration at the Association's statewide area meetings.

- The proposal was then presented and discussed at area meetings throughout Missouri, consistent with MSHSAA's standard procedure for soliciting member input on proposed amendments.

- Following those meetings, then Executive Director reported the feedback to the Board at its January 2004 meeting, again held at MSHSAA headquarters in Columbia.

- At that same meeting, the Board voted to place the proposal on the Annual Questionnaire.

- The Questionnaire was provided to all member schools and responses were returned to MSHSAA headquarters in Columbia.

- In March 2004, the Board of Directors, again meeting at MSHSAA headquarters in Columbia, Missouri, certified the results of the 2004 Annual Questionnaire and approved the proposal for inclusion on the Annual Ballot.

- Ballots were likewise returned to MSHSAA's Columbia headquarters, where the canvassing committee counted and compiled the votes.

- The results were then presented to the Board, which certified the election results at its June 15, 2004, meeting, also held at MSHSAA headquarters in Columbia.

Exhibit 1, ¶¶ 16(a)-(j); Exhibit 3 at p. 6, 12, 17, 23, 24, 33; Exhibit 4 at p. 1; Exhibit 5 at p. 1; Exhibit 6 at p. 1-4. From start to end, the challenged constitutional provision was proposed, developed, tabulated, and certified in the Western District of Missouri.

The current election process for the Board of Directors is also concentrated in the Western District. Nominations are submitted to MSHSAA staff located at the Columbia office, where they are reviewed for eligibility. Exhibit 1, ¶ 17(a). Votes for the Board positions are then submitted through the MSHSAA website, after which a staff member in the Columbia office compiles the results and presents them to the Board. ¶ 17(b). The Board then approves and certifies the election results at its June meeting in Columbia. ¶ 17(c).

The events giving rise to Plaintiffs' claims followed this process and also occurred entirely within the Western District. Tyler Willis, the principal of Cassville R-IV High School in Barry County, Missouri (located within the Western District), nominated Dr. Johnson for a position on the MSHSAA Board of Directors by sending an email to Charla Boggs, a MSHSAA staff member who works from the Columbia office. ¶ 18(b). The nomination was processed through the Columbia headquarters, and Dr. Johnson was later notified that he was not eligible to run for the position by MSHSAA Executive Director Jennifer Rukstad, who also works from the Columbia office. ¶ 18(c). Dr. Johnson resides in

16

the Western District of Missouri, meaning the effects of that eligibility determination were felt there as well. ¶ 18(a).

To be sure, MSHSAA maintains contacts throughout Missouri, including within the Eastern District. The Association has member schools located in that district, and certain postseason tournaments take place there. But those contacts are unrelated to the claims asserted in this case.

Plaintiffs challenge a constitutional provision that was proposed, developed, and certified in the Western District of Missouri. And the alleged discriminatory decision—that Dr. Johnson was ineligible to run for the position—occurred in the Western District. In total, both the conduct Plaintiffs challenge and the alleged harm arising from it occurred in the Western District. Because MSHSAA's contacts with the Eastern District are unrelated to the underlying controversy, this Court lacks specific jurisdiction over MSHSAA.

This conclusion is consistent with the analysis in *Aldrich v. NCAA*. There, a California district court rejected specific jurisdiction over the NCAA because the challenged conduct (the NCAA's "failure to legislate appropriately") occurred at the organization's headquarters in Indiana. 484 F. Supp. 3d at 795. The Court explained that the alleged harm arose from the NCAA's legislative decisions made in Indiana, not from the presence of NCAA member schools or other contacts in California. *Id.* The Court also emphasized that there was no allegation that the abuse alleged in the complaint occurred in California. *Id.* According to the Court, a finding of specific jurisdiction "would improperly subject the NCAA to jurisdiction anywhere because the NCAA failed to implement legislation in all 50 states." *Id.*

The same reasoning applies here. The constitutional provision at issue was proposed and adopted through governance processes centered in the Western District, the eligibility determination was made and communicated from that district, and the alleged injury was felt there. Because Plaintiffs'

claims do not arise out of or relate to MSHSAA's contacts with the Eastern District, the Court lacks

specific jurisdiction over MSHSAA for purposes of Section 1391(d).[5]

### B. A substantial part of the events or omissions giving rise to the claim did not occur in the Eastern District of Missouri.

Because MSHSAA does not reside in the Eastern District of Missouri for venue purposes, the

next question is whether a substantial part of the events or omissions giving rise to the claim occurred

in the Eastern District of Missouri. They did not.

As set forth above, the events giving rise to Plaintiffs' claims occurred in the Western District

of Missouri. The constitutional provision Plaintiffs challenge was proposed, developed, and certified

in the Western District of Missouri. The nomination and eligibility determination at issue were handled

by MSHSAA officials working from the Columbia office. Dr. Johnson resides in the Western District;

the alleged injury was felt in the Western District. Because a substantial part of the events giving rise

to Plaintiffs' claims occurred in the Western District—not the Eastern District—venue is improper

in the Eastern District under Section 1391(b)(2). *See Quaintance v. City of Columbia*, 2017 WL 168462, at

*2 (E.D. Mo. Jan. 17, 2017) (finding venue improper in the Eastern District of Missouri and

transferring the case to the Western District of Missouri because the defendant did not reside in the

Eastern District and no events giving rise to the suit occurred there).

### C. Section 1391(b)(3) does not apply because this action could have been brought in the Western District of Missouri.

Section 1391(b)(3)  provides that "if there is no district in which an action may otherwise be

brought as provided in this section, any judicial district in which any defendant is subject to the court's

personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3). That circumstance is not

present in this case. As explained above, the Western District of Missouri is the district where

MSHSAA is headquartered, where its governance decisions are administered, and where the events

---

[5] *Supra* note 4.

giving rise to Plaintiffs' claims occurred. Because this action could have been brought in the Western District of Missouri under Sections 1391(b)(1) & (2), Section 1391(b)(3) does not apply. Venue is not proper in the Eastern District of Missouri.

Pursuant to Section 1406(a), when venue is improper, the case must be dismissed or, if in the interest of justice, transferred. *Atl. Marine Const. Co.*, 571 U.S. at 55. Defendant believes dismissal is proper. If the Court determines otherwise, however, Defendant respectfully moves that this case be transferred to the Western District of Missouri.

## II.     Motion to Transfer Venue

In the alternative, this case should be transferred to the Western District of Missouri pursuant to Section 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." When considering whether transfer is appropriate under Section 1404(a), "the Court must consider the statute's three factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice." *Houlihan Trading Co. v. CTI Foods, LLC*, 2021 WL 5758436, at \*10 (E.D. Mo. Dec. 3, 2021) (citing *Terra Int'l, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 695 (8th Cir. 1997)). Each of these factors weigh in favor of transfer to the Western District of Missouri.

### A.  *The convenience of the parties and witnesses favors transfer.*

When assessing "the convenience of parties and witnesses" under Section 1404(a), the Court may consider:

> (1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.

*Moore v. Compass Group USA, Inc.*, 2023 WL 7696811, at *2 (E.D. Mo. Nov. 15, 2023) (citing *Burkemper v. Dedert Corp.*, 2011 WL 5330645, at *2 (E.D. Mo. Nov. 7, 2011)). These considerations overwhelmingly favor the Western District.

The parties and the key witnesses are located in the Western District. MSHSAA maintains its headquarters and sole office in Columbia, Missouri, where all of its employees work (including those involved in the eligibility determination at issue). Exhibit 1, ¶¶ 4, 5. Dr. Johnson resides in the Western District. ¶ 18(a). And although the State of Missouri may be said to reside throughout the state, its principal offices (including the State Capitol and the Attorney General's Office) are located in Jefferson City, inside of the Western District.

All documents relevant to this case are located in the Western District. MSHSAA maintains its records at its Columbia headquarters, ¶ 6, and any documents in Dr. Johnson's possession would be located in the Western District.

The Western District is also where the conduct giving rise to Plaintiffs' claims occurred. As explained above, the constitutional provision at issue was proposed, developed, and certified through governance processes centered in the Western District; the eligibility determination was made and communicated from the Western District; and Plaintiff's alleged injury was felt in the Western District. ¶¶ 16(a)-(j); 18(a)-(c). Finally, the applicability of substantive law does not weigh against transfer because both courts sit within Missouri.

Taken together, these considerations show that the Western District is the more convenient forum for the parties, witnesses, and evidence. *See Hagin v. Allstate Vehicle and Prop. Ins. Co.*, 2026 WL 593342, at *4-5 (W.D. Mo. Mar. 3, 2026) (convenience of the witnesses and parties weighed in favor of transfer from the Western District of Missouri to the Eastern District of Missouri).

20

### B. *The interests of justice favor transfer.*

The interests of justice similarly point to the Western District as the proper forum. Most of the traditional interests-of-justice considerations (comparative costs, enforceability of judgment, obstacles to a fair trial, and conflict-of-law issues) are neutral because both courts sit within Missouri and apply Missouri law. *See Moore*, 2023 WL 7696811, at *3 (E.D. Mo. Nov. 15, 2023) (outlining the factors courts consider in evaluating the interests of justice).

Instead, what matters here most is the forum's connection to the dispute and judicial economy. All require a transfer of venue.

The Western District has the sole connection to the underlying controversy: the constitutional provision was proposed, developed, and certified in the Western District; the eligibility determination was made and communicated from the Western District; and the alleged injury was felt in the Western District. And because this case is in its early stages, transfer will not result in duplication or wasted judicial resources. Instead, moving the case now will ensure that the litigation proceeds in the district with the most substantial ties to the parties, witnesses, and events.

Although entitled to consideration, Plaintiffs' choice of forum receives diminished deference where the chosen forum lacks a meaningful connection to the dispute. *See In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010) (plaintiff's choice of forum "was entitled to minimal weight in the § 1404(a) determination" where there was "no relevant connection" between the forum and the dispute). Here, where there is no meaningful connection between the disputed actions and the Eastern District, the interests of justice support transfer to the Western District.

Accordingly, even if the Court determines that venue is proper in the Eastern District, the balance of the Section 1404(a) considerations makes clear that the Western District of Missouri is the more appropriate forum. Transfer will place this case where the parties, witnesses, documents, and operative events are actually located and will promote the efficient and fair resolution of the dispute.

21

**III.    Motion to Dismiss the State as a Plaintiff for Lack of Subject Matter Jurisdiction**

Aside and apart from venue issues, the State cannot participate in this case because of a lack of subject matter jurisdiction. In fact, a case issued by this Court the immediate day after the State filed this lawsuit confirms the lack of subject matter jurisdiction.

The Court's recent decision in *Missouri v. Starbucks Corp.*, No. 4:25-CV-00165-JAR, 2026 WL 309714 (E.D. Mo. Feb. 5, 2026), provides a thorough and directly applicable framework for evaluating the State of Missouri's attempt to invoke *parens patriae* standing in a discrimination action. Under that framework (which is grounded in Article III, *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982), and Eighth Circuit precedent), Missouri has not and cannot demonstrate the concrete injury and genuine quasi-sovereign interest necessary to proceed on Counts II, III, and IV. The State's claims under the Fourteenth Amendment, Title VII, and Section 1981 should be dismissed as to the State of Missouri and the Attorney General for lack of subject matter jurisdiction.

Article III standing requires every plaintiff to demonstrate "(1) [ ] an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The injury must be "concrete, particularized, and actual or imminent," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013), not "possible or theoretical," *Starbucks*, 2026 WL 309714, at *11 (citing *Clapper*, 568 U.S. at 409). When a state invokes *parens patriae* standing, these requirements are not relaxed; they are supplemented by an "additional hurdle" that requires the state to demonstrate a "quasi-sovereign interest" distinct from the private interests of its citizens. *Massachusetts v. EPA*, 549 U.S. 476, 538 (2007) (Roberts, C.J., dissenting) (quoting *Snapp*, 458 U.S. at 607). The plaintiff bears the burden of establishing both elements. *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019).

22

### A. The State has not alleged a concrete, particularized injury to a substantial segment of its population.

The threshold defect in Missouri's *parens patriae* theory in this Complaint is the same one that doomed its claims in *Starbucks*. The Complaint points to an injury to one private individual (Dr. Johnson) and attempts to extrapolate from there a harm to the State's populace at large. That extrapolation fails as a matter of law.

*Snapp* requires Missouri to demonstrate harm to "a sufficiently substantial segment of its population," not a discrete group of private citizens. 458 U.S. at 607. The Complaint here centers on a single, identifiable act: MSHSAA declined to consider Dr. Johnson for the At-Large Region 2 seat because the board had a majority of white, non-Hispanic males at the time. That is a concrete and particularized injury to Dr. Johnson, not to the State's general population. As the *Starbucks* Court recognized, "[w]hen only a group of individual citizens is injured, the state's interest in those claims, while existent, does not rise to the level of quasi-sovereign." *Starbucks*, 2026 WL 309714, at *12 (citing *Snapp*, 458 U.S. at 602). When only one individual citizen is the identified victim of the challenged conduct, the State's interest is plainly nominal.

The State's attempt to dress up Dr. Johnson's individual grievance as a statewide harm should be rejected for the same reasons articulated in *Starbucks*. The Complaint does not allege any concrete economic, social, or institutional harm felt by Missouri residents generally. Without those allegations, the State "cannot hope to establish the 'additional hurdle' of the necessary quasi-sovereign interest called into action when the State's populace in general has been harmed." *Id.* at *13 (citing *Massachusetts v. EPA*, 549 U.S. at 538).

### B. The State has not alleged a quasi-sovereign interest separate and distinct from Dr. Johnson's individual claims.

Even setting aside the absence of harm to a substantial segment of the population, the State's *parens patriae* theory independently fails because it does not identify a quasi-sovereign interest of

23

Missouri that is "separate and distinct from the interests of private citizens." *Id.* at \*12 (citing *Snapp*, 458 U.S. at 600-01). The *Starbucks* Court was emphatic on this point: "*more* must be alleged than an injury to a large enough group to assert *parens patriae* standing; the state *itself* must have been injured in some way by the defendant's conduct." *Id.* (citing *Snapp*, 458 U.S. at 607).

The State's Complaint fails to identify any such state-level injury. The conduct at issue (MSHSAA's application of its constitutional criteria for two at-large board seats) has not impaired Missouri's sovereignty, disrupted Missouri's economy, or degraded Missouri's equal footing with other states. No Missouri governmental function has been impaired. No Missouri program has been undermined. No Missouri institution has been harmed. What the Complaint describes is a single decision by a private nonprofit organization that affected one Missourian's eligibility for a volunteer board seat.

As the *Starbucks* Court found in parallel circumstances, this is precisely the kind of situation in which the State has "at most a nominal interest": the type of private injury that individuals are "free to redress . . . in their own individual lawsuits." *Id.* at \*14. Missouri's invocation of its general "quasi-sovereign interest in the health and wellbeing . . . of its residents," Doc. [1] ¶ 37, is insufficient without the factual predicate to support it. The *Starbucks* Court recognized that this quasi-sovereign interest "is not a blank check" and does not permit Missouri to "merely litigate as a volunteer the personal claims of its citizens." *Starbucks*, 2026 WL 309714 at \*12 (quoting *Wyatt Bury, LLC v. City of Kansas City*, 804 F. Supp. 3d 939, 964 (W.D. Mo. 2025)). Indeed, the Western District of Missouri in *Wyatt Bury* reached the same conclusion when Missouri attempted to assert a quasi-sovereign interest in a civil rights context, finding (as this Court should here) that the State's generalized invocation of its citizens' welfare does not by itself establish the injury *Snapp* requires.

## C. Missouri's reliance on Snapp's "stigmatization" language is misplaced.

The Complaint alleges that MSHSAA's constitutional provision "stigmatize[s] applicants as unqualified because of race or sex," Doc. [1] ¶ 40, apparently attempting to invoke the quasi-sovereign interest recognized in *Snapp* where the defendants stigmatized Puerto Rico's entire labor force by categorically refusing to hire any Puerto Rican workers. That analogy does not hold.

In *Snapp*, the defendants' discriminatory policy effectively disqualified the entire eligible workforce of the Commonwealth; not because of what individuals had done or where they lived, but because of their shared Puerto Rican identity. The practical result was that no Puerto Rican could compete for those jobs, placing the entire Commonwealth's labor force on unequal footing with other states' citizens. The *Starbucks* Court carefully distinguished that scenario from cases (like this one) where the challenged policy "purportedly seek[s] to advantage and equalize opportunities for a portion of" the state's population, and where only a discrete group of individuals (not the State's labor force writ large) faces any disadvantage. *Starbucks*, 2026 WL 309714 at *14-15.

MSHSAA's at-large constitutional provision does not stigmatize Missourians as Missourians. It does not affect Missouri's footing with other states. It does not prevent any category of Missouri residents from participating in public life. The constitutional provision governs who may fill two of ten board seats for one nonprofit organization—seats that are, in any event, available to any Missourian who meets the professional qualifications when the board's demographic composition changes. The Complaint's invocation of stigma amounts to the same misuse of *Snapp* that the *Starbucks* court rejected: an attempt to analogize a targeted individual grievance to the kind of wholesale, population-level discrimination that *parens patriae* standing was designed to address.

## D. The presence of a named individual does not cure the State's standing defects.

The State may argue that Dr. Johnson's presence as a co-plaintiff resolves any standing concerns. It does not.

25

Article III standing is assessed plaintiff-by-plaintiff and claim-by-claim. The fact that Dr. Johnson has standing to pursue Count I (his individual Section 1983 claim) does not confer standing on the State to pursue Counts II, III, and IV in its own right. The State must independently demonstrate injury, causation, and redressability for each claim it asserts, as well as for *parens patriae* claims, the additional quasi-sovereign interest requirement. Because the State has not done so, Counts I, II, and IV must be dismissed as to the State of Missouri and the Attorney General for lack of subject matter jurisdiction under Rule 12(b)(1).

The *Starbucks* decision provides a clear and authoritative guide to the limits of Missouri's *parens patriae* authority in employment discrimination actions filed in this district. Just as the Missouri Attorney General could not transform a group of hypothetical individual employment grievances against Starbucks into a quasi-sovereign interest sufficient to sustain federal jurisdiction, the Attorney General cannot transform Dr. Johnson's individual candidacy dispute with MSHSAA into a statewide harm that implicates Missouri's sovereign interests. For the foregoing reasons, Defendant MSHSAA respectfully requests that this Court dismiss the State of Missouri and the Attorney General from Counts II, III, and IV for lack of Article III standing.

## IV.    Motion to Dismiss for Failure to State a Claim

Independent of dismissal of the State for lack of subject matter jurisdiction, Counts III and IV should be dismissed for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a complaint must "allege sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court must accept well-pleaded factual allegations as true, the Court is not required to accept legal conclusions, labels, or conclusory assertions masquerading as facts. *Iqbal*, 556 U.S. at 678.

### A. *The State fails to state a claim in Count III (Title VII).*

#### i.  **The State is not authorized to sue under Title VII.**

Title VII authorizes civil actions only by the EEOC, the United States Attorney General, and a person who is "aggrieved." 42 U.S.C. § 2000e-5(f)(1). The State claims it qualifies as an "aggrieved" person because it is purportedly "aggrieved by MSHSAA's subjecting its employees to leadership tainted by unlawful discrimination." *See* Doc. [1] ¶ 143. That argument fails.

The *Starbucks* decision is once again instructive. There, the Court held that even assuming Missouri had standing to pursue the claims of individual citizens, the State's Title VII claim still failed because the Attorney General lacked statutory authority to bring it. *Starbucks*, 2026 WL 309714 at *14.

As the *Starbucks* Court explained, "Title VII's conferral of a cause of action on a person 'aggrieved'" requires the plaintiff's injury to "be one Title VII was created to redress." *Id.* at *16. "The term 'aggrieved' incorporates the familiar test requiring a plaintiff to fall within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Id.* (citation modified). The purpose of Title VII is "to protect employees and applicants from adverse employment actions based on unlawful considerations such as membership in a protected class or participation in the prosecution of a complaint under the statute." *Id.*

Here, as in *Starbucks*, the State has not "not sufficiently alleged an injury that falls within the zone of interests protected by Title VII." *Id.* The State is neither an employee nor applicant for employment who has faced discrimination or retaliation by MSHSAA. *Id.* Instead, the State "seeks to step into the shoes of allegedly harmed employees and applicants . . . ." *Id.* But as the *Starbucks* Court concluded, "it is not enough to demonstrate that some person could be aggrieved—the *plaintiff* must be aggrieved." *Id.* Title VII does not confer a cause of action upon "state attorneys general attempting to shoehorn the complaints of private citizens into their own cause of action against a private

27

employer." *Id.* Because the State has failed to allege an injury Title VII was created to redress, its Title VII claim must be dismissed.

### ii. The State failed to exhaust mandatory administrative remedies.

The State's Title VII claim must also be dismissed because the State failed to exhaust administrative remedies. A person claiming to be aggrieved by a violation of Title VII "may not maintain a suit for redress in federal district court until he has first unsuccessfully pursued certain avenues of potential administrative relief." *Love v. Pullman Co.*, 404 U.S. 522, 523 (1972). Title VII requires a plaintiff to file a charge of discrimination with the Equal Employment Opportunity Commission and receive a right to sue letter before initiating a civil action. 42 U.S.C. § 2000e-5(b), (f)(1); *Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir. 1996). This exhaustion requirement is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate and promote conciliation. *Shannon*, 72 F.3d at 684.

Here, the State never filed a charge with the EEOC, never received a right-to-sue letter, and never gave the EEOC an opportunity to investigate or attempt conciliation. The Complaint alleges no facts showing an attempt to initiate the EEOC process, much less exhaustion of administrative remedies. Accordingly, Count III must be dismissed for failure to exhaust administrative remedies.

Just as it did in *Starbucks*, the State may attempt to argue that it is excused from exhausting administrative remedies because the administrative process would be futile. According to the State, the "EEOC's administrative claims-processing scheme is not designed for State-led suits or even suits that allege harm against many people." *Starbucks*, No. 4:25-cv-00165-JAR (E.D. Mo. Feb. 5, 2026), Doc. [27]. This argument is without merit.

The EEOC is tasked with "investing[ating] and act[ing] on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission." 42 U.S.C. § 2000e-6(e). Even the EEOC itself must comply with Title VII's pre-

suit procedures. *See EEOC. v. CVS Pharmacy, Inc.*, 809 F.3d 335, 343 (7th Cir. 2015) ("EEOC is required to comply with all of the pre-suit procedures contained in Section 706 when it pursues 'pattern or practice' violations."); *see also* EEOC, Commission Opinion Letter: Section 707 (Sep. 3, 2020), https://www.eeoc.gov/laws/guidance/commission-opinion-letter-section-707 ("[A]ny claim the Commission pursues under section 707 must follow the procedures of section 706."). MSHSAA is unaware of any case excusing a State from exhausting administrative remedies on this basis advanced by the State. In fact, as the *Starbucks* Court pointed out, in *People of State of N.Y. by Abrams v. Holiday Inns, Inc.*, 656 F. Supp. 675, 678–79 (W.D.N.Y. 1984), "'Right to Sue letters were in fact subsequently issued by the EEOC to *all plaintiffs*' (emphasis added) presumably including the plaintiff State of New York." *Starbucks*, 2026 WL 309714, at *16 n. 35. The Court therefore opined: "It would seem that the administrative process before the EEOC is not, as Plaintiff insists, impossible for a state to successfully pursue." *Id.* Because the State neither exhausted Title VII's administrative remedies nor alleged any basis for excusing that requirement, its Title VII claim must be dismissed.

### B.  The State and Dr. Johnson fail to state a claim in Count IV (42 U.S.C. § 1981).

In Count IV, both the State and Dr. Johnson assert claims under 42 U.S.C. § 1981. These claims fail as a matter of law for multiple independent reasons.

#### i.  Plaintiffs cannot maintain a freestanding Section 1981 claim.

In *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1179, 1181 (8th Cir. 1998), the Eighth Circuit held that "[a] federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983." Since *Artis*, the Eighth Circuit has "repeatedly recognized the prohibition on freestanding § 1981 claims against state actors." *Onyiah v. St. Cloud State University*, 5 F.4th 926, 929 (8th Cir. 2021).

Here, Plaintiffs expressly allege that MSHSAA is a state actor. *See* Doc. [1] ¶ 147. Yet they assert a standalone Section 1981 claim outside the Section 1983 framework. That alone requires dismissal of Count IV.

### ii.    Section 1981 does not reach sex discrimination.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is *enjoyed by white citizens*." 42 U.S.C. § 1981(a) (emphasis added). As evident from the statute's plain language, Section 1981 protects against racial discrimination and does "not encompass sex discrimination claims." *Butler v. Crittenden County, Ark.*, 708 F.3d 1044, 1051 (8th Cir. 2013). In Count IV of the Complaint, Plaintiffs allege: "In discriminating against Dr. Johnson on the basis of race and sex, MSHSAA denied Dr. Johnson the full and equal benefit of the law." Doc. [1] ¶ 149. To the extent Plaintiffs rely on allegations of sex discrimination to support their Section 1981 claim, such allegations cannot sustain a claim under Section 1981.

### iii.    Plaintiffs fail to allege a specific law or proceeding of which they were denied the full and equal benefit.

Plaintiffs bring their Section 1981 claim under the equal benefit clause,[6] but Plaintiffs fail to allege a specific law or proceeding of which they were denied the full and equal benefit.

"The equal benefit clause may only be invoked when one party denies another the 'full and equal benefit of all laws and proceedings *for the security of persons and property* as is enjoyed by white citizens.'" *Chapman v. Higbee Co.*, 319 F.3d 825, 832 (6th Cir. 2003) (quoting § 1981). The Eighth Circuit has held that "[b]ecause the state is the sole source of the law, it is only the state that can deny the full

---

[6] Because Plaintiffs limited their Section 1981 claim to the "full and equal benefit" clause, Defendant will not address the "make and enforce contracts" clause. To the extent Plaintiffs intended to bring a claim under that clause, that claim would also fail as neither Dr. Johnson nor the State have alleged a contractual relationship with MSHSAA. *See* Doc. [1] (no allegations of a contractual relationship); *Starbucks*, 2026 WL 309714, at *16 (dismissing the State's Section 1981 claim under the "make and enforce contracts" clause because the State had not demonstrated a "personal stake in any contract at issue").

and equal benefit of the law." *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001). "The 'security of persons and property' language limits the potential class of cases that may be brought under the equal benefit provision." *Chapman*, 319 F.3d at 832. "A litigant must demonstrate the denial of the benefit of a law or proceeding protecting his or her personal security or a cognizable property right." *Id.* Thus, to survive a motion to dismiss, Plaintiffs "must identify a relevant law or proceeding for the 'security of persons and property.'" *Phillip v. University of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003); *see Aziz v. FedEx Ground Package System, Inc.*, 2019 WL 636972, at *6 (E.D. Tex. Feb. 14, 2019) ("It is therefore clear that for [the plaintiff] to allege the denial of the benefit of a law or proceeding protecting her personal security or property right, she must identify such a law or proceeding, right of her persons, and cognizable property right."); *Carfagna v. Fisher Island Club, Inc.*, 796 F. Supp. 3d 1178, 1188 (S.D. Fla. 2025) ("To prove a violation of § 1981's equal-benefit clause, Plaintiff must identify a relevant law that protects the 'security of persons and property' and illustrate that Defendant deprived her of 'the full and equal benefit' of that law based on racial animus.").

Courts have consistently enforced this limitation by rejecting Section 1981 equal benefit claims where the plaintiff failed to identify a specific law or proceeding protecting the security of persons or property of which they were denied the full and equal benefit. For example, in *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1310 (11th Cir. 2010), the plaintiff argued that the "suspension of his medical staff privileges deprived him of his property interest in practicing medicine without the benefit of the same 'proceedings for the security of . . . [that] property as is enjoyed by white citizens.'" The Court rejected this argument, reasoning that Georgia law does not entitle a physician to continued medical staff privileges or recognize a broad property interest in continuing to practice medicine. *Id.* And in *Judie v. Hamilton*, 872 F.2d 919 (9th Cir. 1989), the plaintiff claim he was denied the "full and equal benefit of all laws" when his supervisory responsibilities were restricted based on his race. The Ninth Circuit rejected the claim, explaining that plaintiff's job description, which was promulgated pursuant

31

to Washington State civil service law, was not a law as required for a claim under the equal benefit clause. *Id.* at 923; *see also Aziz*, 2019 WL 636972, at *7 (plaintiff failed to allege a plausible Section 1981 claim where "she neither specifie[d] a cognizable property right nor a law or proceeding protecting that right").

Here, too, Plaintiffs have failed to identify a specific law or proceeding of which they were denied the full and equal benefit. Instead, they offer only conclusory assertions that Defendants "denied Dr. Johnson the full and equal benefit of the law." Doc. [1] ¶ 149. That allegation merely parrots the statutory language and does not identify any law or proceeding tied to the "security of persons and property." Plaintiffs' reference to the State's generalized interest in preventing discrimination, *see* Doc. [1] ¶ 150, likewise fails to identify a qualifying law or proceeding. Plaintiffs' failure to identify a qualifying law or proceeding is fatal to their Section 1981 equal-benefit claim, and the claim should be dismissed.

## CONCLUSION

For the reasons set forth above, the entire Complaint should be dismissed for improper venue. If the case is to continue, the proper venue is the Western District and the proper parties should be Plaintiff Johnson and Defendant MSHSAA. The State of Missouri cannot participate in this case for lack of subject matter jurisdiction and Counts III and IV should be dismissed in their entirety with prejudice as to all parties for failure to state a viable or permissible claim.

WHEREFORE, Defendant Missouri State High School Activities Association respectfully requests that this Court:

- Dismiss the Complaint in its entirety for improper venue;

- Alternatively, transfer this action to the United States District Court for the Western District of Missouri;

- Dismiss the State of Missouri with prejudice for lack of subject matter jurisdiction; and

32

- Dismiss Counts III and IV with prejudice as to all parties for failure to state a claim upon which relief can be granted.

Defendant further requests such other and further relief as this Court deems just and proper.

Respectfully submitted,

**MICKES O'TOOLE, LLC**

/s/ *Grant Wiens*
Grant Wiens, #65701MO
Natalie A. Hoernschemeyer, #49692MO
Katelyn Schmidt, #77085MO
12412 Powerscourt Drive, Suite 200
St. Louis, Missouri 63131
Telephone: (314) 878-5600
Facsimile: (314) 878-5607
natalie@mickesotoole.com
gwiens@mickesotoole.com
kschmidt@mickesotoole.com

*Attorneys for Defendant Missouri State High School Activities Association*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of April 2026 a true and correct copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF electronic filing system, to be served upon all counsel of record.

/s/ *Grant Wiens*

34