**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF MISSOURI *ex rel.* CATHERINE L. HANAWAY , ATTORNEY GENERAL OF MISSOURI, | Case No. 4:26-cv-00171-SRC |
| & | **REPLY TO DEFENDANT'S OPPOSITION TO THE MOTION TO INTERVENE** |
| MERLYN JOHNSON, *Plaintiffs*, | |
| v. | |
| MISSOURI STATE HIGH SCHOOL ACTIVITIES ASSOCIATION, | |
| *Defendant*. | |

## I.  INTRODUCTION

Pursuant to Rule 24(a)(1) and Section 902 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000h-2, the United States has an absolute, unconditional right to intervene in a case to seek relief from the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution on account of race and sex discrimination.

Defendant Missouri State High School Activities Association's (MSHSAA) opposition to the United States' Motion to Intervene raises a number of meritless arguments, some of which are contradicted by Defendant's own motion to dismiss Missouri's complaint.  For the reasons stated in the United States' original motion, ECF 17, and those appearing below, the Court should grant the motion.

1

## II.   ARGUMENT

### A. The United States Has an Unconditional Statutory Right to Intervene

Title 42, Section 2000h-2 grants the United States an unconditional and absolute right to intervene in any action that "has been commenced in any court of the United States seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, sex or national origin" whenever the "Attorney General certifies that the case is of general public importance."

MSHSAA does not dispute that this case is an action that has been commenced in a "court of the United States" and that it "seek[s] relief from the denial of equal protection of the laws." Instead, MSHSAA attacks the propriety of the Attorney General's certification of the case as one of "general public importance." MSHSAA urges this Court to examine whether the Attorney General's certification is meritorious but cites no binding caselaw suggesting that the Court has the power to do so. Indeed, the very statutes MSHSAA cites point in the opposite direction.

MSHSAA relies on the Fair Housing Act, Title VII, and the American with Disabilities Act, each of which has a provision similar to Section 2000h-2.[1] Regarding the intervention provisions in Title VII and the American with Disabilities Act, judicial review of the intervention request is explicitly contemplated by the plain text of statute because the statute leaves the decision on whether to grant such a request to the "court … in its discretion." *See* 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a). In contrast, Section 2000h-2 does *not* vest the court with discretion as to whether to permit intervention once the Attorney General certifies the case as one of "general

---

[1] In discussing intervention under the Fair Housing Act, MSHSAA cites the wrong section of the statute. Interventions are governed by 42 U.S.C. § 3613(e) rather than 42 U.S.C. § 3614(a).

2

public importance."[2] The omission of the language conferring discretionary authority on the courts is significant. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *San Francisco v. EPA*, 604 U.S. 334, 344 (2025) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). The Supreme Court has "invoked this canon time and time again." *Id.* It is hard to "believe that Congress omitted the term ['discretion of the court'] from § [2000h-2] simply because it wanted to save ink or assumed that … interested parties would understand that the omission of the term was inconsequential." *Id.* It therefore follows that the fact that Congress chose to vest courts with discretion in matters of intervention in cases brought under Sections 3614(a) and 2000e-5, but chose to omit the same language in Section 2000h-2, is an indication that Congress did not intend for courts to have that discretion where the Attorney General certified the case under the latter section.

Indeed, no court that has considered the question has agreed with MSHSAA's position. The only case MSHSAA cites in support of the proposition that courts may examine the Attorney General's determination is an out-of-circuit decision that did not even hold that judicial review is appropriate in the context of a § 2000h-2 certification. *See* ECF 24 at 6 (citing *United States v. Hunter*, 459 F.2d 205 (4th Cir. 1972)). *Hunter* was a case brought under the Fair Housing Act which authorizes the Attorney General to "commence a civil action in any appropriate United States district court" whenever "any group of persons has been denied any of the rights granted by

---

[2] Similarly, a certification of "public importance" under Title VII's Section 707(b), 42 U.S.C. § 2000e-6(b), is not subject to judicial review. *See United States v. Northside Realty Assocs., Inc.*, 474 F.2d 1164, 1168 (5th Cir. 1973) ("The question of what constitutes an issue of general public importance is, absent specific statutory standards, a question most appropriately answered by the executive branch."); *United States v. City of Philadelphia*, 838 F. Supp. 223, 227 (E.D. Pa. 1993) ("[T]he Attorney General's belief [that a case raises an issue of general public importance] is not subject to judicial review.").

[the Fair Housing Act] and such denial raises an issue of general public importance." 42 U.S.C. § 3614(a). The District Court held that the challenged newspaper advertisements violated the Act but refused to grant injunctive relief because it concluded that the case was not of "general public importance." *See United States v. Hunter*, 324 F. Supp. 529, 535 (D. Md. 1971). Because the judgment was otherwise favorable to the United States, it did not appeal. *See Hunter*, 459 F.2d at 209-10. The only party appealing was the publisher of the newspaper where the offending advertisement appeared. *Id.*

On its way to affirming the District Court, the Fourth Circuit disagreed with the lower court's conclusion that the case was not one of "general public importance." *See id.* at 217-18. However, given that the United States did not appeal from an otherwise favorable judgment below, it is not clear whether the issue of judicial reviewability was even pressed in that Court. Thus, *Hunter* is at best equivocal on whether judicial review of the Attorney General's certifications as to the public importance of a case is appropriate.

In contrast, courts that have explicitly considered this question have been unanimous in their conclusion that the Attorney General's certification of a case as one of "general public importance" is entirely discretionary and beyond review. *See, e.g.*, *Spangler v. United States*, 415 F.2d 1242, 1244 (9th Cir. 1969) ("The right to intervention by the United States as provided in [2000h-2] is an absolute and not a permissive one."); *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 125 n. 14 (5th Cir. 1973) ("It is not for the District Court to determine when an issue of public importance justifying the intervention of the Attorney General is raised."). *See also Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1286 at n.5 (5th Cir. 1985) (listing 42 U.S.C. § 2000h-2 among "[e]xamples of statutes that … confer an unconditional right to intervene under Rule 24(a)(1)"); *Jones v. Caddo Par. Sch. Bd.*, 735 F.2d 923, 925 (5th Cir. 1984) (noting its

4

previous holding that the United States is "entitled" to intervene pursuant to 42 U.S.C. § 2000h-2); Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1906 (3d ed.) ("The United States also has an unconditional statutory right to intervene in actions seeking relief from the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution on account of race, color, religion, or national origin."). Simply put, when the United States makes the required showing, "the motion to intervene must be granted" and "[t]he complaint in intervention . . . [should be] authorized to be filed." *Carter v. Sch. Bd. of W. Feliciana Par.*, 569 F. Supp. 568, 571 (M.D. La. 1983).

A review of the Attorney General's determination is also inappropriate because there are no judicially discernable standards as to what may or may not be "important." As a result, "[t]he question of what constitutes an issue of general public importance is, absent specific statutory standards, a question most appropriately answered by the executive branch." *United States v. Northside Realty Assocs., Inc.*, 474 F.2d 1164, 1168 (5th Cir. 1973). *See also United States v. City of Philadelphia*, 838 F. Supp. 223, 227 (E.D. Pa. 1993) ("[T]he Attorney General's belief [that a case raises an issue of general public importance] is not subject to judicial review.").The "public importance" of a case is "in the eye of the beholder." *See W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, 2014 WL 1257762, at *24 (D. Colo. Mar. 27, 2014); *State Bd. of Tax Comm'rs v. Town of St. John*, 751 N.E.2d 657, 662 (Ind. 2001) ("[S]ocietal importance is in the eye of the beholder.").

Moreover, as one district court explained,

> The statute … incorporates no specific standards for the guidance of the Attorney General and apparently leaves the matter solely within the discretion of that official. The Attorney General may well have many factors to consider in making a determination that a case is of general public importance, many of which may well be of a non-public nature. It is even possible that a case could be of general

5

> public importance, though the presiding judge were ignorant of that situation.

*Carter*, 569 F. Supp. at 571.  Given that in deciding whether to certify a case as one of "general public importance" the Attorney General considers multiple factors, including policy considerations committed to the discretion of the Executive Branch, contrary to MSHSAA's suggestion, ECF 24 at 6, it would be no more appropriate to require the Attorney General to publicly set out his reasoning for the certification, than it would be to require him to publicly justify bringing or not bringing particular criminal charges.  *See United States v. Berrigan*, 482 F.2d 171, 180 (3d Cir. 1973) ("'Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought.'  This basic principle of general application is premised on a recognition of the constitutional separation of powers.") (quoting *Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967)).

Given these authorities, it is unsurprising that courts have routinely granted motions to intervene whenever the Attorney General has certified a case as one of public importance, and have done so without second-guessing that determination.  *See, e.g.*, *L.W. by & through Williams v. Skrmetti*, 2023 WL 3513302, at *1 (M.D. Tenn. May 16, 2023) ("It is widely recognized that § 2000h-2 confers such an unconditional right to intervene upon the United States.")[3]; *Melendres v. Arpaio*, 2015 WL 11071095, at *1 (D. Ariz. Aug. 13, 2015) ("Upon the filing of a timely motion, the United States' right to intervene pursuant to Rule 24(a)(1) and § 902 'is an absolute and not a permissive one.'") (quoting *Spangler*, 415 F.2d at 1244).  *See also Tangipa v. Newsom*, No. 2:25-

---

[3] While the Sixth Circuit reversed the District Court's judgment on the merits and the Supreme Court affirmed the Sixth Circuit, *see L. W by & through Williams v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023), *aff'd sub nom. United States v. Skrmetti*, 605 U.S. 495 (2025), at no point was the District Court's intervention decision questioned.  Indeed, as the name of the case indicates, in the Supreme Court, it was the United States that was the Petitioner.

6

cv-10616, ECF 38 (C.D. Cal. Nov. 14, 2025); *Faulkner v. Jones*, 858 F. Supp. 552, 562 (D.S.C. 1994), *aff'd as modified and remanded*, 51 F.3d 440 (4th Cir. 1995).

Finally, MSHSAA's argument that particular scrutiny is warranted here because "the certification is signed and executed by Pamela Bondi, who was no longer serving as the Attorney General on the date the motion to intervene was filed," ECF 24, at 6, is without merit.

It is undisputed that Pamela Bondi was serving as Attorney General at the time certification was signed on March 31, 2026. *See* ECF 17-2. That is all that is required. *See* 42 U.S.C. § 2000h-2 (permitting intervention by the Attorney General "if the Attorney General certifies that the case is of general public importance."). By its plain terms, § 2000h-2 gives the Attorney General (or his designee) two functions—certification and intervening once such certification has been made. Both decisions must be made by *the* Attorney General (or the designee), but they need not be made by the *same* Attorney General (or same designee). All that is required is that the person signing the certification is the Attorney General at the time such certification was signed and the motion to intervene was filed by the Attorney General at the time the motion was filed. Unquestionably, both requirements have been met. Pamela Bondi was a serving Attorney General at the time she signed the certification, and Harmeet K. Dhillon (who signed the motion to intervene) was (and is) the Assistant Attorney General for the Civil Right Division—an official designated by the Attorney General with enforcement of various civil rights statutes. Thus, MSHSAA's argument as to Pamela Bondi's tenure is legally meritless.

In short, "Congress intended to grant the Attorney General—*whoever occupies that office*—an unconditional right to intervene in those cases which he certifies are of general public importance. The court has no more authority to review [the Attorney General's reasoning] for such

certification than it does to review the fact of certification." *Carter*, 569 F. Supp. at 571 (emphasis added).

### B. The United States Plainly Satisfied Fed. R. Civ. P. 24(a)(2).

The United States also satisfies the requirements for intervention as of right under Fed. R. Civ. P.  24(a)(2).  Under this rule, "[a] third party is entitled to intervention as of right if (1) its motion is timely, (2) it has an interest in the subject matter of the litigation, (3) disposition of the case may impair that interest, and (4) existing parties do not adequately protect that interest." *Entergy Arkansas, LLC v. Thomas*, 76 F.4th 1069, 1071 (8th Cir. 2023).

MSHSAA does not (and cannot) dispute that the motion is timely and instead argues that the United States does not have a "significantly protectable interest" in this litigation, and that, in any event, the United States' interests are "already adequately represented."  MSHSAA is wrong on both points.

### 1.  The United States Has a Significant Protectable Interest in This Action

The United States has a significant protectable interest in ensuring that state and local programs do not violate the Fourteenth Amendment.  "The requirement of a significantly protectable interest is generally satisfied when the interest is protectable under some law, and there is a relationship between the legally protected interest and the claims at issue." *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) (quotation and alteration marks omitted). Although it is well settled that "the United States suffers a concrete harm to its sovereignty when its laws are violated," *La Unión del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 526 (W.D. Tex. 2022), MSHSAA argues that this "broad, undifferentiated interest is [in]adequate for purposes of Rule 24(a)(2)."  ECF 24 at 2.  MSHSAA cites no authority for this proposition, and its argument is non-sensical.

To the contrary, "[w]hen a State, . . . by a law or pattern of conduct, takes action motivated by a policy which collides with national policy as embodied in the Constitution, the interest of the United States 'to promote the interest of all' gives it standing to challenge the State in the courts." *See United States v. City of Jackson*, 318 F.2d 1, 14 (5th Cir. 1963). By definition, the interest of the United States is not tied to an injury to a particular individual but is focused on harm done to the national policy as embodied in the federal laws. As the Supreme Court explains it, the United States suffers "injury to its sovereignty" when its laws are violated, and that such an injury is sufficient to establish Article III standing. *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000). And if such an injury is sufficient for standing purposes, *a fortiori* it is sufficient for the purposes of intervention. *See Little Sisters of the Poor Sts. Peter and Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020).[4]

It should also be noted that contrary to MSHSAA's attempt to minimize the import of this case, *see* ECF 24, at 3 (characterizing the issue as merely "a single decision by a private, nonprofit association, affecting one Missourian's candidacy for a seat on a volunteer board"), the resolution of this matter affects all sporting extra-curricular activities in the entire State of Missouri because all of these activities are governed by MSHSAA. The issue is not just whether Dr. Merlyn Johnson was improperly denied a seat on MSHSAA's board. The issue is also whether MSHSAA—a state entity—can continue to discriminate among applicants on the basis of race and sex. *See* ECF 17-

---

[4] Under Eighth Circuit's precedent, proposed intervenors "must demonstrate they meet the elements of Article III standing plus the requirements of Federal Rule of Civil Procedure 24." *United States v. Reilly Tar & Chem. Corp.*, 43 F.4th 849, 854-55 (8th Cir. 2022). This requirement appears to be somewhat inconsistent with the Supreme Court's admonition that an intervenor must independently demonstrate standing only "if it pursues relief that is broader than or different from the party invoking a court's jurisdiction." *Little Sisters of the Poor*, 591 at 674 n.6. However, for present purposes the distinction is irrelevant because as explained above, the United States has standing.

1, at 7, ¶43 ("Plaintiffs and the United States need judicial relief declaring that MSHSAA's constitution and actions are unconstitutional under the Fourteenth Amendment of the U.S. Constitution."); *id.*, at 9 (seeking "[a] permanent injunction prohibiting MSHSAA … from disqualifying candidates for the at-large board positions on the basis of race or sex and from engaging in unlawful discrimination on the bases of race and sex.").

## 2.  Disposition of the Case May Impair the United States' Interests

As described above, the resolution of this case affects the United States' protectable interests, and if the case were resolved in favor of MSHSAA, such a disposition would impair those interests.  True enough, the Court may well (and indeed should) resolve this case against MSHSAA, but the test is whether the "disposition of the case *may* impair that interest," *Entergy Arkansas*, 76 F.4th at 1071 (emphasis added), not whether it is *certain* to impair them.  Because it remains possible that case may be resolved against the United States' interests, the United States can intervene as of right in this litigation.

## 3.  The United States' Interests Are Not Adequately Represented

MSHSAA also argues that the Court should deny United States' motion to intervene because the State of Missouri is adequately representing the United States' interests.  Given that simultaneously with its opposition to intervention MSHSAA filed a motion to dismiss Missouri's complaint arguing that it does not have standing to pursue the Equal Protection Claim, *see* ECF 23, at 23-26, the argument treads dangerously close to the classic definition of *chutzpah*.[5]  If MSHSAA is correct that Missouri lacks standing to pursue the Equal Protection Clause challenge

---

[5] "The most famous definition of 'chutzpah' is, of course, itself law-themed: chutzpah is when a man kills both his parents and begs the court for mercy because he's an orphan."  Alex Kozinski & Eugene Volokh, *Lawsuit, Shmawsuit*, 103 Yale L.J. 463, 467 (1993).

10

to MSHSAA's policy, it necessarily follows that Missouri cannot adequately represent United States' interest in ensuring that MSHSAA does not violate that Clause's guarantee.

Whether Missouri has standing, however, is not relevant to the question of whether Missouri can adequately represent the United States' sovereign interests.  Missouri and the United States are different sovereigns and represent different citizenry and therefore different interests.  That these interests may overlap does not lead to the conclusion that the State of Missouri can speak for the entire United States.  *Cf. Short v. Fed. Highway Admin.*, 2020 WL 1932769, at \*2 (D.N.D. Apr. 21, 2020) ("While the County's interests overlap in some respects with those of the United States, they are distinct in important ways. As a county government, it is concerned with local problems ….  And the County cannot assume that the [federal] position 'will remain static or unaffected by unanticipated policy shifts'….").

### C. The United States Meets the Permissive Intervention Standard Under Fed. R. Civ. P. 24(b).

MSHSAA recognizes that "[t]he principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights."  ECF 24, at 4 (quoting *S. Dakota ex rel Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003)).  MSHSAA asserts, *ipse dixit*, that "[a]llowing an additional sovereign party to intervene would materially increase the cost and complexity of this litigation in a manner that directly undermines judicial economy, without conferring any corresponding benefit." *Id.*  But MSHSAA does not explain how or why there would increase costs and case complexity, nor how it would be burdened by United States' participation.

This case involves a facial challenge to MSHSAA's policies and is unlikely to require much (if any) discovery, depositions, and the like.  Because the United States and the State of Missouri both allege that MSHSAA's policy is unlawful on its face, the dispute is strictly legal and the Court

11

will be able to decide this matter on the pleadings or at summary judgment.  The United States' participation will result in additional briefs, but given the fact that United States may address different and complementary legal theories to those advanced by the other Plaintiffs, such briefing will not be "without conferring any … benefit." *Id.* MSHSAA's argument to the contrary is unsupported and entirely without merit.

### III.    CONCLUSION

For the foregoing reasons, as well as those in its initial Memorandum of Law in support of its Motion to Intervene, the Court should grant the motion.

DATED: April 22, 2026

THOMAS C. ALBUS
United States Attorney
Eastern District of Missouri

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

JESUS A. OSETE
Principal Deputy Assistant Attorney General

ERIC SELL
Deputy Assistant Attorney General

*/s/ Anthony J. Debre*
ANTHONY J. DEBRE #67612MO
Assistant United States Attorney

United States Attorney's Office
111 South Tenth Street, 20th Floor
St. Louis, MO 63102
Phone: (314) 539-2200
E-mail: anthony.debre@usdoj.gov

*/s/ Gregory Dolin*
GREGORY DOLIN (DC No. 497455)
Senior Counsel

Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 598-9251
Email: gregory.dolin@usdoj.gov

ATTORNEYS FOR INTERVENOR-PLAINTIFF
UNITED STATES OF AMERICA

13