**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

STATE OF MISSOURI *ex rel.*
CATHERINE L. HANAWAY,
ATTORNEY GENERAL OF MISSOURI,

&

MERLYN JOHNSON,

    *Plaintiffs,*

      v.

MISSOURI STATE HIGH SCHOOL
ACTIVITIES ASSOCIATION,

    *Defendant.*

Case No. 4:26-cv-00171-SRC

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS FOR IMPROPER VENUE OR IN THE ALTERNATIVE TO TRANSFER,
TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, AND TO
<u>DISMISS FOR FAILURE TO STATE A CLAIM</u>**

TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... 2

TABLE OF AUTHORITIES ................................................................................. 3

INTRODUCTION................................................................................................. 9

ARGUMENT ....................................................................................................... 9

   I. This Court has subject matter jurisdiction over the State's claims.................. 9

     A. Missouri has alleged a concrete, particularized injury to its population .. 12

     B. Missouri has a quasi-sovereign interest in ending race and sex-based discrimination, especially discrimination done by a state actor................ 14

     C. "Stigmatization" of Missourians inflicts an injury on Missouri ................ 16

   II. Missouri states claims under Title VII and Section 1981 .............................. 18

     A. The State has a claim under Title VII (Count III) ..................................... 18

       1. The State can bring a Title VII claim..................................................... 18

       2. Missouri did not need to exhaust Title VII's administrative remedies ................................................................................................ 21

     B. Plaintiffs state a claim under 42 U.S.C. § 1981 (Count IV)....................... 23

       1. Plaintiffs do not have a freestanding Section 1981 claim .................... 23

       2. Plaintiffs allege a law or proceeding by a state actor.......................... 24

   III. Venue is proper in this Court.................................................................... 28

   IV. Transfer of venue to the Western District is not warranted. ....................... 32

CONCLUSION .................................................................................................. 35

## TABLE OF AUTHORITIES

**Cases**

*Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.,*
440 F.3d 992 (8th Cir. 2006)......................................................................22

*Aldrich v. National Collegiate Athletic Association,*
484 F. Supp. 3d 779 (N.D. Cal. 2020)........................................................31

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez,*
458 U.S. 592 (1982)..............................................................................Passim

*Am. Can Co. v. Crown Cork & Seal Co.,*
433 F. Supp. 333 (E.D. Wis. 1977) ............................................................34

*Aziz v. FedEx Ground Package Sys., Inc.,*
No. 4:18-cv-00245, 2019 WL 636972 (E.D. Tex. Feb. 14, 2019) .............26

*Aziz v. Trump,*
231 F. Supp. 3d 23 (E.D. Va. 2017) .....................................................15, 16

*Baker v. Stuart Broad. Co.,*
560 F.2d 389 (8th Cir. 1977)......................................................................20

*Bartlett v. U.S. Dept. of Agric.,*
716 F.3d 464 (8th Cir. 2013).......................................................................23

*Bilello v. Kum & Go, LLC,*
374 F.3d 656 (2004) ....................................................................................27

*Blue Cross & Blue Shield of N.C. v. Rite Aid Corp.,*
519 F. Supp. 3d 522 (D. Minn. 2021) ........................................................32

*Bob Jones Univ. v. United States,*
461 U.S. 574 (1983)....................................................................................21

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.,*
582 U.S. 255 (2017)....................................................................................29

*Butler v. Crittenden Cnty.,*
708 F.3d 1044 (8th Cir. 2013).....................................................................24

3

*C.R. Dep't v. Grimmway Enters., Inc.,*
    800 F. Supp. 3d 1084 (E.D. Cal. 2025) ................................................................ 11, 17

*Carfagna v. Fisher Island Club, Inc.,*
    796 F. Supp. 3d 1178 (S.D. Fla. 2025) ...................................................................... 26

*Chapman v. Higbee Co.,*
    319 F.3d 825 (6th Cir. 2003) ...................................................................................... 27

*City of Richmond v. J.A. Croson Co.,*
    488 U.S. 469 (1989) .................................................................................................... 21

*Civil Rights Department v. Grimmway Enterprises, Inc.,*
    800 F. Supp.3d (2025). ............................................................................................... 18

*Clayton v. White Hall Sch. Dist.,*
    875 F.2d 676 (8th Cir. 1989) ...................................................................................... 20

*EEOC v. FedEx,*
    268 F. Supp. 2d 192 (E.D.N.Y. 2003) ....................................................... 12, 17, 18, 19

*Elmore v. Harbor Freight Tools USA, Inc.,*
    844 F.3d 764 (8th Cir. 2016) ................................................................................ 26, 27

*Everett v. Riverside Hose Co. No. 4, Inc.,*
    261 F. Supp. 463 (S.D.N.Y. 1966) .............................................................................. 28

*Fort Bend Cnty. v. Davis,*
    587 U.S. 541 (2019) .................................................................................................... 22

*Fowlkes v. Ironworkers Loc. 40,*
    790 F.3d 378 (2d Cir. 2015) ....................................................................................... 22

*Georgia v. Pa. R. Co.,*
    324 U.S. 439 (1945) ...................................................................................................... 9

*Hardaway v. Hartford Pub. Works Dep't,*
    879 F.3d 486 (2d Cir. 2018) ....................................................................................... 22

*In re Apple, Inc.,*
    602 F.3d 909 (8th Cir. 2010) ............................................................................ 33, 34, 35

*In re Nine Mile Ltd.,*
    692 F.2d 56 (8th Cir. 1982) ........................................................................................ 33

4

*In re SuperValu, Inc.*,
870 F.3d 763 (8th Cir. 2017)................................................................................24

*In re United States ex rel. MSHSAA*,
682 F.2d 147 (8th Cir. 1982)..............................................................................25

*James v. Norfolk & W. Ry. Co.*,
430 F. Supp. 1317 (S.D. Ohio 1976) ..................................................................34

*Jimenez v. Wellstar Health Sys.*,
596 F.3d 1304 (11th Cir. 2010)..........................................................................26

*Johnson v. City of Shelby*,
574 U.S. 10 (2014)..........................................................................................24, 25

*Judie v. Hamilton*,
872 F.2d 919 (9th Cir. 1989)..............................................................................26

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)............................................................................................21

*Louisiana v. Callais*,
Nos. 24-109 & 24-110, 2026 WL 1153054 (U.S. Apr. 29, 2026) ...............................9

*Mahone v. Waddle*,
564 F.2d 1018 (3d Cir. 1977) .............................................................................26

*Massachusetts v. Bull HN Info. Sys., Inc.*,
16 F. Supp. 2d 90 (D. Mass. 1998)........................................................... 12, 15, 17

*Miles v. Bellfontaine Habilitation Ctr.*,
481 F.3d 1106 (8th Cir. 2007)............................................................................22

*Missouri v. Starbucks Corp.*,
No. 4:25-cv-00165-JAR, 2026 WL 309714 (E.D. Mo. Feb. 5, 2026).................Passim

*Morningside Church, Inc. v. Rutledge*,
9 F.4th 615 (8th Cir. 2021) ......................................................................30, 31, 32

*New York by Schneiderman v. Utica City Sch. Dist.*,
177 F. Supp. 3d 739 (N.D.N.Y. 2016)........................................................... 11, 17

5

*New York ex rel. James v. Niagara-Wheatfield Cent. Sch. Dist.,*
119 F.4th 270 (2d Cir. 2024)................................................................ 11, 15, 16, 17

*Oien v. Thompson,*
824 F. Supp. 2d 898 (D. Minn. 2010) ...................................................................35

*Onyiah v. St. Cloud State Univ.,*
5 F.4th 926 (8th Cir. 2021) ...................................................................................24

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No.,*
1, 551 U.S. 701 (2007)..............................................................................................9

*Parham v. Sw. Bell Tel. Co.,*
433 F.2d 421 (8th Cir. 1970)..................................................................................20

*Pennslvania v. Flaherty,*
547 F. Supp. 172 (W.D. Pa. 1982) .................................................................. 12, 18

*People by Vacco v. Mid Hudson Med. Grp., P.C.,*
877 F. Supp. 143 (S.D.N.Y. 1995)................................................................ 12, 15, 17

*People ex rel. Abrams v. 11 Cornwell Co.,*
695 F.2d 34 (2d Cir. 1982) ......................................................................... 11, 15, 17

*People v. Peter & John's Pump House, Inc.,*
914 F. Supp. 809 (N.D.N.Y. 1995)............................................................... 12, 15, 17

*Phillip v. Univ. of Rochester,*
316 F.3d 291 (2d Cir. 2003) ..................................................................................27

*Platt v. Minn. Mining & Mfg. Co.,*
376 U.S. 240 (1964)................................................................................................33

*Price Waterhouse v. Hopkins,*
490 U.S. 228 (1989)................................................................................................30

*Raymond v. Bd. of Regents of the Univ. of Minn.,*
847 F.3d 585 (8th Cir. 2017)..................................................................................23

*S.A.A. v. Geisler,*
127 F.4th 1133 (8th Cir. 2025) ..............................................................................25

*Saunders v. Mills,*
172 F. Supp. 3d 74 (D.D.C. 2016)..........................................................................22

6

*Sedlacek v. Hach,*
  752 F.2d 333 (8th Cir. 1985)................................................................................20

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,*
  600 U.S. 181 (2023).............................................................................................13

*Support Ministries for Persons with AIDS, Inc. v. Vill. of Waterford,*
  799 F. Supp. 272 (N.D.N.Y. 1992)............................................................ 12, 15, 17

*Terra Int'l, Inc. v. Miss. Chem. Corp.,*
  119 F.3d 688 (8th Cir. 1997)....................................................................33, 34, 35

*The People of the State of New York v. 11 Cornwell Company*
  718 F.2d 22 (2d Cir. 1983) ...................................................................................15

*Thompson v. North American Stainless,*
  562 U.S. 170 (2011).............................................................................................21

*Tillman v. Wheaton-Haven Recreation Ass'n,*
  410 U.S. 431 (1973).............................................................................................28

*United States v. McManus,*
  535 F.2d 460 (8th Cir. 1976)................................................................................33

*United States v. Virginia,*
  518 U.S. 515 (1996).............................................................................................21

*Wieman v. Updegraff,*
  344 U.S. 183 (1952).............................................................................................28

*Williams v. U.S. Fid. & Guar. Co.,*
  236 U.S. 549 (1915).............................................................................................19

*Wright v. Xerox Corp.,*
  882 F. Supp. 399 (D.N.J. 1995) ...........................................................................31

*Yeti Coolers, LLC v. Love Deals Inc.,*
  No. 1:23-CV-79, 2023 WL 4754479 (W.D. Tex. July 24, 2023) .............................35

*Zipes v. Trans World Airlines, Inc.,*
  455 U.S. 385 (1982).............................................................................................22

7

**Statutes**

28 U.S.C. § 1391(d) ................................................................................................29

28 U.S.C. § 1404(a) .........................................................................................32, 33

28 U.S.C. § 1406(a) ................................................................................................32

42 U.S.C. § 1981(a) .........................................................................................26, 27

42 U.S.C. § 1983......................................................................................................24, 25

42 U.S.C. § 2000e-5 ........................................................................................18, 19, 23

42 U.S.C. § 2000e(a)........................................................................................18, 19, 23

**Rules**

Federal Criminal Procedure Rule 21(b)........................................................33

## INTRODUCTION

"The way to stop discrimination on the basis of race is to stop discriminating on the basis of race." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 748 (2007) (Roberts, C.J.) (plurality opinion). Defendant, Missouri State High School Athletic Association (MSHSAA), disagrees, insisting that it may benevolently discriminate to foster "diverse participation" in its leadership. Doc. 23 (MTD Br.) at 9. MSHSAA merely repackages assumptions about the lawfulness of diversity, equity, and inclusion initiatives that the Supreme Court has now fully repudiated. *See, e.g.*, *Louisiana v. Callais*, Nos. 24-109 & 24-110, 2026 WL 1153054, at *10 (U.S. Apr. 29, 2026) (explaining the very narrow circumstances in which racial discrimination is permissible). Facing an inevitable loss on the merits, MSHSAA wields a host of technical objections to keep this Court from hearing this case. Its efforts fail—MSHSAA must answer for its unlawful discrimination.

## ARGUMENT

### I.   This Court has subject matter jurisdiction over the State's claims.

On standing, MSHSAA does not contest that Dr. Johnson (who is represented by the State) has standing to bring this suit. *See* MTD Br. at 23. However, MSHSAA seeks to dismiss the State as an independent plaintiff on standing grounds. *Id.* at 22–26. This effort fails.

"Suits by a State, parens patriae, have long been recognized." *Georgia v. Pa. R. Co.*, 324 U.S. 439, 447 (1945). And as the Supreme Court has explained, States can sue in *parens patriae* to "secur[e] residents from the harmful effects of

9

discrimination." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 609 (1982).  This establishes Missouri's standing here.

Specifically, a State can maintain a *parens patriae* action if the State expresses "a quasi-sovereign interest" that is "apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party." *Id.* at 607.  Among other potential bases for standing, "a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Id.*  And "[a]lthough more must be alleged than injury to an identifiable group of individual residents, the indirect effects of the injury must be considered as well in determining whether the State has alleged injury to a sufficiently substantial segment of its population." *Id.*

Under these standards, the Supreme Court in *Snapp* held that Puerto Rico had standing to sue private employers who discriminated against Puerto Rican workers because of their ethnicity.  *See generally id.* at 608–610.  In the process, the Court emphasized a State's quasi-sovereign interest in "securing residents from the harmful effects of discrimination," noting that courts have "had too much experience with the political, social, and moral damage of discrimination not to recognize that a State has a substantial interest in assuring its residents that it will act to protect them from these evils." *Id.* at 609.  The Supreme Court also rejected the employers' argument that Puerto Rico lacked *parens patriae* standing because there were "only 787 job opportunities at stake" in the case.  *Id.*  Rather, it held that the "universal sting" of discrimination affected all Puerto Ricans—even though those affected were

10

a discrete group of private individuals. *Id.* (quotation omitted). Properly considered, *Snapp*'s holding and reasoning make finding *parens patriae* standing here an easy case.

MSHSAA's contrary argument relies (almost) exclusively on Judge Ross's recent decision in *Missouri v. Starbucks Corp.*, No. 4:25-cv-00165-JAR, 2026 WL 309714 (E.D. Mo. Feb. 5, 2026). *See* MTD Br. 22–26. With respect, Missouri believes that decision is wrong and has appealed that decision. *See* Notice of Appeal, *Missouri v. Starbucks Corp.*, No. 4:25-cv-00165-JAR, (E.D. Mo. Feb. 12, 2026), Dkt. No. 44; *see also* 2026 WL 309714, at \*13, \*15 (relying on a dissenting opinion to hold that the State could not satisfy an "additional hurdle" to *parens patriae* standing). Judge Ross's decision cuts against the overwhelming weight of federal authority, which makes clear that States have *parens patriae* standing to challenge discriminatory policies that injure their citizens. *See New York ex rel. James v. Niagara-Wheatfield Cent. Sch. Dist.*, 119 F.4th 270, 280–82 (2d Cir. 2024) (*parens patriae* standing to challenge Title IX violations); *People ex rel. Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 38–40 (2d Cir. 1982) (finding *parens patriae* standing because the State had "no less an interest in seeing to it that its mentally retarded obtain equal protection under the housing laws than Puerto Rico has in seeing that its citizens obtain equal employment opportunities"), *vacated in part on other grounds on reh'g*; 718 F.2d 22 (2d Cir. 1983); *C.R. Dep't v. Grimmway Enters., Inc.*, 800 F. Supp. 3d 1084, 1103 (E.D. Cal. 2025) (recognizing California's "interest in addressing alleged disability-based unlawful employment practices occurring within [its] borders"); *New York by*

11

*Schneiderman v. Utica City Sch. Dist.*, 177 F. Supp. 3d 739, 748 (N.D.N.Y. 2016) (*parens patriae* standing to "eradicat[e] discrimination in educational opportunities"); *EEOC v. FedEx*, 268 F. Supp. 2d 192, 196–99 (E.D.N.Y. 2003) (*parens patriae* standing to enforce Title VII); *Massachusetts v. Bull HN Info. Sys., Inc.*, 16 F. Supp. 2d 90, 98 (D. Mass. 1998) (*parens patriae* standing to oppose age discrimination and noting "[t]he circumstances of this case are similar to those in *Snapp*"); *People v. Peter & John's Pump House, Inc.*, 914 F. Supp. 809, 813 (N.D.N.Y. 1995) (*parens patriae* standing to sue a racially-exclusive nightclub because of "discrimination that has a destructive societal effect justifying *parens patriae* standing"); *People by Vacco v. Mid Hudson Med. Grp., P.C.*, 877 F. Supp. 143, 147–48 (S.D.N.Y. 1995) (*parens patriae* standing to protect deaf citizens from discrimination); *Support Ministries for Persons with AIDS, Inc. v. Vill. of Waterford*, 799 F. Supp. 272, 277–79 (N.D.N.Y. 1992) (*parens patriae* standing to prevent housing discrimination against persons with AIDS); *Pennslvania v. Flaherty*, 547 F. Supp. 172, 174 (W.D. Pa. 1982) (*parens patriae* standing to challenge discriminatory hiring by a police department).  This Court, of course, is not bound by Judge Ross's decision—and this Court should decline to follow it.

### A.    Missouri has alleged a concrete, particularized injury to its population.

Relying on *Starbucks*, MSHSAA argues that their discrimination against Dr. Johnson is only an injury as to him, "not to the State's general population."  MTD Br.

12

23. According to MSHSAA, the Complaint "does not allege any concrete, economic, social, or institutional harm felt by Missouri residents generally." *Id.* [1]

This mistates the facts alleged in the Complaint—which alleges that MSHSAA maintains a *statewide* discriminatory policy that has injured, and continues to injure, Missourians across the State. Doc. 1 (Compl.) at ¶¶ 65, 67, 76, 127. Specifically, The Complaint alleged that MSHSAA has maintained its discriminatory policy for years, and that it will continue to do so absent intervention. *Id.* ¶¶ 20, 36. Plaintiffs also averred that MSHSAA has barred or rejected "candidates" based on their race or sex from the two at-large board positions. *Id.* ¶¶ 65, 67, 76, 127. The allegations that MSHSAA has boardly discriminated against Missouri citizens on the basis of race and sex qualify as harms to Missouri in *parens patriae*. *See Snapp*, 458 U.S. at 609 (recognizing the harm to a State's interests from the impact of discrimination even though the tangible effects were limited).

---

[1] Additionally, MSHSAA (at 7–8) points to state policies that it says create gender and race-based goals in areas including state contracts and state boards. Assuming for present purposes that MSHSAA's descriptions are accurate, these policies offer no help—to the extent *any* state policy effectuates freewheeling priorities for immutable race or sex-based characteristics, they are now likely unconstitutional under the Fourteenth Amendment and/or preempted by federal antidiscrimination law. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206–07 (2023) (explaining that a classification must be "remediating specific, identified instances of past discrimination that violated the Constitution or a statute").

**B.    Missouri has a quasi-sovereign interest in ending race and sex-based discrimination, especially discrimination done by a state actor.**

Under any conception of *Snapp*, Missouri has alleged an injury to its own quasi-sovereign interest.  Transitioning from an (incorrect) attack on the adequacy of the complaint, MSHSAA argues that Missouri does not have a "state-level injury" because "the Complaint describes . . . a single decision by a private nonprofit organization that affected one Missourian's eligibility for a volunteer board seat." MTD Br. 23–24.  But again, MSHSAA attacks a strawman.  True, if Missouri merely parrotted injury to Dr. Johnson and alleged *solely* injury to him, that might push *parens patriae* standing too far.  *See Snapp*, 458 U.S. at 607 (explaining how states cannot be nominal parties).  However, as perviously explained, that's not what Missouri's portion of the Complaint does; Missouri challenges a *statewide* discriminatory policy that applies to Missourians across the State.  *See* Compl. ¶¶ 65, 67, 76, 127.

MSHSAA continues its strawman attack by asserting that the State cannot show an injury to its interest based on "a single decision." MTD Br. 24.  This is wrong on both the Complaint's allegations and on the law.  Missouri alleges a fixed policy of discrimination that has affected and will continue to affect Missouri citizens beyond Dr. Johnson.  *See* Compl. ¶¶ 67, 81–97.

The fact that Missouri alleges—and MSHSAA does not dispute—the existence of a statewide discriminatory policy makes Missouri's standing easy.  Federal courts across the country have relied on *Snapp* and held that States have standing to challenge even small-scale and localized discriminatory policies.  *See, e.g.*, *Niagara-*

14

*Wheatfield*, 119 F.4th at 281 & n.4 (recognizing as much and collecting cases); *Snapp*, 458 U.S. at 609; *Aziz v. Trump*, 231 F. Supp. 3d 23, 32 (E.D. Va. 2017); *Bull HN*, 16 F. Supp. 2d at 98–101.  That there may be only a single or a handful of instances where a defendant exercised a discriminatory policy does not deprive a state of its quasi-sovereign interest and innoculate the defendant from suit.  *See Niagara-Wheatfield*, 119 F.4th at 281 n.4.

Illustrating the point, courts have consistently found state standing in cases involving even very limited discrimination.  In *Aziz*, the court held that Virginia had *parens patriae* standing to protect even *non-citizen* residents from discrimination—about 300 of whom were "directly affected" and the whole state indirectly effected because "the stigma of discrimination 'carr[ies] a universal sting.'"  231 F. Supp. 3d at 32 (alteration in original) (quoting *Snapp*, 458 U.S. at 609).  Other similar examples abound.  *See 11 Cornwell Co.*, 695 F.2d at 39–40 (discrimination against eight-to-ten mentally disabled persons); *Bull HN*, 16 F. Supp. 2d at 98–101 (discrimination against about fifty employees); *Peter & John's Pump House*, 914 F. Supp. at 812 (discrimination against eight African-American patrons); *Mid Hudson Med. Grp.*, 877 F. Supp. at 147–48 (discrimination against seven-to-ten hearing-impaired patients); *Vill. of Waterford*, 799 F. Supp. at 277 (discrimination against fifteen people with AIDS).

The Second Circuit's decision in *Niagara-Wheatfield* is instructive.  There, the Second Circuit found that New York had standing to sue when *one* school district allegedly violated Title IX.  119 F.4th at 282–84.  The court emphasized that "dozens"

15

of students were "subjected to their peers' sexual assault and harassment" and "gender-based violence," and that these students were "directly" "injured by the School District's alleged inaction." *Id.* at 282. Also, the school's inaction "indirectly" affected the parents of the harassed students, future victims of harassment, and the "entire student body." *Id.* at 283. Finally, the court emphasized the toxic effect of discrimination on the entire community because "*Snapp* explicitly recognized the harmful effects wrought on a community by the alleged discriminatory acts of a small subset of its members." *Id.* Taking these harms together, New York pleaded sufficient facts to support an inference of harm to "a substantial segment of the state's population." *Id.*

This case is much easier than *Niagara-Wheatfield* and qualifies as protecting "'residents from the harmful effects of discrimination'"—a "textbook quasi-sovereign interest[]." *Aziz*, 231 F. Supp. 3d at 32 (quoting *Snapp*, 458 U.S. at 609). MSHSAA's board makes decisions that affect the entire State. Compl. ¶¶ 52, 66, 75, 112. Its discriminatory policy in staffing its board applies throughout the entire State. *Id.* ¶¶ 65, 76. This policy thus affects everyone who applies for an at-large board position. *Id.* ¶¶ 67, 127, 138. It also has and will continue to prevent at qualified applicants from eligibility. Because of the policy's statewide impact, MSHSAA's discrimination is *more* widespread than that alleged in *Niagara-Wheatfield*.

### C.    "Stigmatization" of Missourians inflicts an injury on Missouri.

Continuing its (misplaced) reliance on *Starbucks*, MSHSAA contends (at 25) that there is no "stigmatization" here because the at-large provision "does not stigmatize Missourians as Missourians." In other words, MSHSAA reads *Snapp* to

16

only allow lawsuits to coutner discrimination against Missourians *because* they are Missourians (as opposed to, say, Kansans). This reading, of course, would render *Snapp* so narrow as to make it practically meaningless. *See Starbucks*, 2026 WL 309714, at \*14–15.

That reading is also clearly wrong. Although *Snapp* itself dealt with discrimination against Puerto Ricans, *Snapp*'s reasoning speaks more broadly to a State's interest in preventing the "damage of discrimination" to society. 458 U.S. at 608–09. Indeed, *Snapp* separately analyzed Puerto Rico's interests in protecting its citizens from ethnic discrimination *and* in securing its citizens' "full and equal participation in the federal employment service scheme." *See id.* at 608–10. Thus, *Snapp* treats a State's interest in combatting racial discrimination as an independently sufficient quasi-sovereign interest. *See id.* Also, *Snapp*'s "substantial *segment*" test lends itself to fighting discrimination against a *segment* of the population, not just to all of a State's citizens. *Id.* at 607 (emphasis added). *Snapp* also requires courts to account for discrimination's "indirect" harms. *Id.* at 607, 609.

MSHSAA has no responses to these points in *Snapp*. And a host of federal courts have rejected MSHSAA's reading. *See, e.g., Niagara-Wheatfield*, 119 F.4th at 280–82; *11 Cornwell Co.*, 695 F.2d at 38–40; *Grimmway*, 800 F. Supp. 3d at 1103; *Utica City Sch. Dist.*, 177 F. Supp. 3d at 748; *FedEx*, 268 F. Supp. 2d at 196–99; *Bull HN*, 16 F. Supp. 2d at 98; *Peter & John's Pump House*, 914 F. Supp. at 813; *Mid Hudson Med. Grp.*, 877 F. Supp. at 147–48; *Vill. of Waterford*, 799 F. Supp. at 277–

17

79; *Flaherty*, 547 F. Supp. at 174. Missouri thus has *parens patriae* standing to address MSHSAA's stigmatization based on race and sex.

## II.    Missouri states claims under Title VII and Section 1981.

On cause of action, MSHSAA does not contest that Dr. Johnson has a cause of action against it; MSHSAA contests only whether the State can independently sue. *See* MTD Br. 27–29. It can, as federal law makes clear.

### A. The State has a claim under Title VII (Count III).

#### 1.    The State can bring a Title VII claim.

The State qualifies as a "person . . . aggrieved" under Title VII and can prosecute its discrimination claim against MSHSAA under that statute. *See* 42 U.S.C. § 2000e-5. Much as before, MSHSAA relies entirely on the *Starbucks* decision to argue (at 27–28) that Missouri is not an "aggrieved" person so any injury to the State does not fall within the "zone of interests protected by Title VII."

But this argument conflicts with Title VII's statutory text and precedent. Title VII's "standing provision, codified at 42 U.S.C. § 2000e-5, authorizes civil suits by a 'person claiming to be aggrieved.'" *FedEx*, 268 F. Supp. 2d at 197. And Title VII defines "person" to include "governments" and "governmental agencies." 42 U.S.C. § 2000e(a). Taken together, these provisions "clearly authorize the State" and the Attorney General's Office, as a government and government agency, "to bring suit under Title VII." *FedEx*, 268 F. Supp. 2d at 197. At least two federal courts have adopted this reading of Title VII, and no court has disagreed. *See id.*; *Grimmway*, 800 F. Supp. at 1103. (holding that California was "authorized to bring suit under Title VII" "[b]ecause states qualify as persons claiming to be aggrieved").

18

MSHSAA's argument (at 27) that Missouri is not "aggrieved" because the State is "neither an employee nor applicant . . . who has face discrimination" by MSHSAA makes no sense of Title VII's text. "[S]tatutes should be sensibly construed, with a view to effectuating the legislative intent." *Williams v. U.S. Fid. & Guar. Co.*, 236 U.S. 549, 555 (1915). Title VII unambiguously contemplates suits by "governments" because "governments" are included in the statute's definition of "person." 42 U.S.C. § 2000e(a); *FedEx*, 268 F. Supp. 2d at 197. And Title VII contemplates enforcement actions by any "person claiming to be aggrieved." 42 U.S.C. § 2000e-5(b). MSHSAA's argument (at 27)—that "aggrieved" persons are only those "who [have] faced discrimination" themselves—makes no sense in the context of governments. *See* 42 U.S.C. § 2000e(a). Obviously, governments do not have a race or sex. Thus, it is nonsensical to deny Missouri statutory standing because Missouri did not "face[] discrimination" on account of its race or sex. MTD Br. 27. Rather, the more sensible reading is that when Title VII refers to "governments," it authorizes the State, as a "guardian," to protect aggrieved citizens. *Snapp*, 458 U.S. at 600 n.8. Further, Missouri itself is "aggrieved" by racial and sex discrimination, *see* 42 U.S.C. § 2000e-5(b), because Missouri has a "state interest" in stopping "discrimination"—which carries a "universal sting" that harms society, *Snapp*, 458 U.S. at 609 (quotation omitted).

Moreover, to the extent "aggrieved" is ambiguous, Eighth Circuit precedents require a broader construction. As the Eighth Circuit held just six years after Title VII's enactment, "Title VII . . . is to be accorded a liberal construction in order to carry

out the purpose of Congress to eliminate the inconvenience, unfairness and humiliation of racial discrimination." *Parham v. Sw. Bell Tel. Co.*, 433 F.2d 421, 425 (8th Cir. 1970). Since then, the Eighth Circuit has repeatedly reaffirmed the importance of broad readings because "Title VII is a remedial statute" designed to eradicate "discrimination." *Sedlacek v. Hach*, 752 F.2d 333, 337 (8th Cir. 1985); *Clayton v. White Hall Sch. Dist.*, 875 F.2d 676, 679 (8th Cir. 1989); *Baker v. Stuart Broad. Co.*, 560 F.2d 389, 391 (8th Cir. 1977).

The Eighth Circuit has broadly read the phrase "person claiming to be aggrieved" in Title VII. *Clayton*, 875 F.2d at 678–80. *Clayton* held that even a white employee who was not subject to discrimination, but who alleged injury because of race discrimination against a coworker, was "aggrieved" under Title VII. *Id. Clayton* explained that, even though the white employee was not directly discriminated against, her "interest in a work environment free of racial discrimination is clearly within the zone of interest protected by Title VII." *Id.* at 679–80.

This case is nearly identical to *Clayton*. Missouri alleges that MSHSAA creates a discriminatory work environment by subjecting its employees to leadership tainted by unlawful discrimination. Compl. ¶ 143. Surely, Missouri—which possesses a "state interest" in stopping widespread "discrimination"—is also "aggrieved" here. *Snapp*, 458 U.S. at 609. No other reading of Title VII makes sense in light of text and precedent.

And Missouri's interest in stopping discrimination by a state actor falls within Title VII's "zone of interest." In *Thompson v. North American Stainless*, 562 U.S. 170

20

(2011), the Supreme Court emphasized that Title VII "incorporates" the "zone of interest" test from the Administrative Procedure Act context. *Id.* at 177–78. And the APA's "zone of interest" test denies review only "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* (quotation omitted). The "zone of interest" test "is not especially demanding" and "the benefit of any doubt goes to the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014) (cleaned up).

Missouri easily satisfies this standard. Missouri's interests here include protecting its citizens, *Snapp*, 458 U.S. at 609, and stamping out discrimination that is "destructive of democratic society," *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 521 (1989) (Scalia, J., concurring) (quotation omitted). "[T]he Government has a fundamental, overriding interest in eradicating racial discrimination," *Bob Jones Univ. v. United States*, 461 U.S. 574, 604 (1983), and an important interest in ending sex discrimination, *United States v. Virginia*, 518 U.S. 515, 531–32 (1996). These interests establish that Missouri is "aggrieved" itself and holds authority to protect "aggrieved" citizens under Title VII.

**2.    Missouri did not need to exhaust Title VII's administrative remedies.**

MSHSAA errs in contending that Missouri needed to exhaust administrative remedies before bringing suit—such an effort would have been futile. MSHSAA asserts (at 28–29) that the State's Title VII claim must be dismissed because the State never exhausted administrative remedies. For one thing, "failure to exhaust

21

administrative remedies is an affirmative defense"—not a basis to dismiss for failure to state a claim. *Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007); *see also Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 490–91 (2d Cir. 2018) (collecting cases). Regardless, Title VII's administrative exhaustion provisions are not jurisdictional, *see Fort Bend Cnty. v. Davis*, 587 U.S. 541, 550 (2019); *Hardaway*, 879 F.3d 489–91, so they are subject to equitable exceptions, s*ee Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.").

Futility exempts Missouri from exhaustion here. The Eighth Circuit has held that a "party may be excused from exhausting administrative remedies . . . if further administrative procedures would be futile." *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 1000 (8th Cir. 2006). "[F]utility may constitute an exception to the requirement of exhaustion of administrative remedies in the area of employment discrimination." *Saunders v. Mills*, 172 F. Supp. 3d 74, 103 (D.D.C. 2016) (quotation omitted); *see also Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 386 (2d Cir. 2015) (recognizing a futility exception to Title VII's exhaustion requirement).

The Eighth Circuit has explained that exhaustion is futile when "an agency may be 'unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented.'" *Raymond v. Bd. of Regents of the Univ. of Minn.*, 847 F.3d 585, 592 (8th Cir. 2017) (quoting *Bartlett v.*

*U.S. Dept. of Agric.*, 716 F.3d 464, 473 (8th Cir. 2013)).    Here, the EEOC's administrative claims-processing scheme is not designed for State-led suits or even suits that allege harm against many people.    Title VII provides that charges of discrimination "shall contain such information and be in such form as the Commission requires."    42 U.S.C. § 2000e-5(b).

Indeed, the EEOC's forms cannot be completed by States obtaining administrative remedies under their *parens patriae* authority—even though Title VII expressly defines states as "persons" that can sue.    42 U.S.C. § 2000e(a).    Title VII's administrative remedies work only for individual claimants who are directly involved in employment, not for governments seeking large-scale relief.    Because the EEOC lacks the "institutional competence to resolve the particular type of issue presented"—a *parens patriae* claim implicating many Missourians—exhaustion is futile.    *See Raymond*, 847 F.3d at 592.

**B. Plaintiffs state a claim under 42 U.S.C. § 1981 (Count IV).**

**1.    Plaintiffs do not have a freestanding Section 1981 claim.**

MSHSAA contends (at 29–30) that Plaintiff's Section 1981 claim is not properly before this Court.[2]    But they once again misconstrue the Complaint— asserting that the claim fails because it was not brought through 42 U.S.C. § 1983. True, "freestanding § 1981 claims against state actors" are "prohibit[ed]."    *Onyiah v.*

---

[2] Plaintiffs' Section 1981 claim does not rest on allegations of sex discrimination.    *See Butler v. Crittenden Cnty.*, 708 F.3d 1044, 1051 (8th Cir. 2013).

23

*St. Cloud State Univ.*, 5 F.4th 926, 929–30 (8th Cir. 2021).[3]   But "[c]ontrary to defendant['s] contention, 'it is unnecessary to set out a legal theory for the plaintiff[s'] claim for relief' in a pleading." *In re SuperValu, Inc.*, 870 F.3d 763, 772 (8th Cir. 2017) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)).

In fact, in *Johnson*, the Supreme Court rejected the exact same argument.  The Court summarily reversed the grant of summary judgment based on plaintiffs' "failure to invoke Rev. Stat. § 1979; 42 U.S.C. § 1983, in their complaint." *Id.* at 10–11.  As the Court explained, "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Id.* at 11.  "The same logic applies here." *See S.A.A. v. Geisler*, 127 F.4th 1133, 1138 (8th Cir. 2025) (en banc).  There is no heightened-pleading rule under Section 1981—the Complaint says all that's necessary for now.[4]

### 2.   Plaintiffs allege a law or proceeding by a state actor.

MSHSAA also contends that Plaintiffs cannot maintain their § 1981 claims because Plaintiffs have failed to identify "any law or proceeding tied to the 'security

---

[3] To the extent that *Onyiah* stands for the proposition that a plaintiff must plead Section 1983 with a Section 1981 claim, this holding is expressly abrogated by *Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam).  *Onyiah*'s Section 1981 reasoning does not grapple with *Johnson*, *see* 5 F.4th at 929–30 (citing only to pre-*Johnson* cases), and the court's holding is limited to issues actually argued before the court.

[4] Even if this Court disagrees, Plaintiffs respectfully request leave of this Court to amend their pleadings to add a citation to Section 1983 with their Section 1981 claim.  *See Johnson*, 574 U.S. at 12 ("For clarification and to ward off further insistence on a punctiliously stated 'theory of the pleadings,' petitioners, on remand, should be accorded an opportunity to add to their complaint a citation to § 1983.").

of persons and property.'"  MTD Br. 32.  Per the facts alleged and MSHSAA's own descriptions of its policy, this position is untenable.

"Because MSHSAA is an association comprised primarily of public schools, its rules are state action governed by the fourteenth amendment." *In re United States ex rel. MSHSAA*, 682 F.2d 147, 151 (8th Cir. 1982).  The Complaint plainly alleges how MSHSAA's constitution "specifies the eligibility for at-large directors."  Compl. ¶ 76.  Applicants (including Dr. Johnson) have been subjected to these rules, which MSHSAA has not disclaimed.  *See id.* ¶¶ 77–90.  And MSHSAA freely—and in detail—concedes how its discriminatory requirements were codified as binding policy and applied to Dr. Johnson.  *See* MTD Br. 15–16.

The fact that Plaintiffs alleged—and MSHSAA does not even dispute—that MSHSAA denied Dr. Johnson the opportunity to compete for the at-large board seat because of his race, Compl. ¶ 79, 149, is dispositive on this point.  As the Eighth Circuit has made clear, "discrimination on the basis of race interfere[s] with . . . . the enjoyment of 'the full and equal benefit of all laws and proceedings for the security of persons and property.'" *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 767 (8th Cir. 2016) (quoting 42 U.S.C. § 1981(a)).

MSHSAA's contrary argument is divorced from the legal standard.  All of MSHSAA's cases involved plaintiffs who brought a Section 1981 equal benefit clause claim derivative of other state laws.  *See Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1310 (11th Cir. 2010) ("suspension of medical staff privileges" by private actor); *Judie v. Hamilton*, 872 F.2d 919, 923 (9th Cir. 1989) ("[Plaintiff's] job description . . .

25

is not a law."); *Carfagna v. Fisher Island Club, Inc.*, 796 F. Supp. 3d 1178, 1188 (S.D. Fla. 2025) (state corporate and tort law "dissuade generalized harms"); *Aziz v. FedEx Ground Package Sys., Inc.*, No. 4:18-cv-00245, 2019 WL 636972, at *7 (E.D. Tex. Feb. 14, 2019) ("[Plaintiff] does not identify a law or proceeding of which she has been denied the full and equal benefit."). Likely adding to the derivative nature of these claims, all of these claims were brought against non-state actors.

By contrast, when a state actor discriminates on the basis of race, courts have held that these claims have identified the denial of the full and equal benefit of all laws and proceedings for the security of persons and property. For example, the Third Circuit allowed two citizens to bring claims against a city for racially motivated discrimination by police. *Mahone v. Waddle*, 564 F.2d 1018, 1028–30 (3d Cir. 1977). The Sixth Circuit held that allegations that security office conducted racially motivated stop and search stated a viable denial of equal-benefit-of-the-law claim. *Chapman v. Higbee Co.*, 319 F.3d 825, 832–33 (6th Cir. 2003) (en banc).[5] And the Second Circuit held that "attempt[ing] to trigger a legal proceeding against plaintiffs" because of plaintiffs' race stated an equal-benefit-clause claim. *Phillip v. Univ. of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003). The Eighth Circuit has also suggested that discriminatory state action suffices to state an equal-benefit-of-the-law claim. *See Bilello v. Kum & Go, LLC*, 374 F.3d 656, 660–61 (2004) (saying that "refusing

---

[5] Although the Sixth Circuit held that Section 1981 allows claims for private discrimination, *id.*, the court went on to hold that there was "a genuine issue of material fact as to whether the security officer acted under 'color of state law,' *id.* at 835.

26

patrons access to restroom facilities" because of their race would state an equal-benefit-clause claim).

The Complaint here makes the cut.  Plaintiffs alleged that MSHSAA denied Dr. Johnson the opportunity to compete for the at-large board seat because of his race.  Compl. ¶ 79, 149.  "[D]iscrimination on the basis of race interfere[s] with . . . . the enjoyment of 'the full and equal benefit of all laws and proceedings for the security of persons and property.'"  *Elmore*, 844 F.3d at 767 (quoting 42 U.S.C. § 1981(a)). That MSHSAA relied on a codified policy makes this case even easier.

To the extent MSHSAA makes a separate argument that Plaintiffs fail to identify a "security of persons or property" which Dr. Johnson and Missourians were denied from at-large board positions, this argument too fails.  The Supreme Court has held that "constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently . . . discriminatory."  *Wieman v. Updegraff*, 344 U.S. 183, 192 (1952).  And that this is a volunteer position should not allow MSHSAA to "disregard . . . constitutional guarantees."  *Everett v. Riverside Hose Co. No. 4, Inc.*, 261 F. Supp. 463, 468 (S.D.N.Y. 1966).

Moreover, the Supreme Court has broadly construed protections of law under the "interrelat[ed]" sections of the 1866 Civil Rights Act.  *See Tillman v. Wheaton-Haven Recreation Ass'n*, 410 U.S. 431, 437–440 (1973) (holding that enforcing a guest policy of a private swimming club that discriminated based on race violated a citizen's right to enjoy property).  Section 1981 protects the right to compete equally for the at-large board position.  Plaintiffs thus adequately state a Section 1981 claim.

27

* * *

For the foregoing reasons, MSHSAA's efforts to dismiss the State from this action and trim Plaintiffs' Complaint fail. The Court should therefore deny MSHSAA's motion to dismiss.

## III.   Venue is proper in this Court.

MSHSAA's venue dispute only becomes material if the State is not a proper plaintiff. For the reasons explained, the State has standing and is a proper plaintiff. Hence, the State is free to sue in any venue affected by MSHSAA's statewide policies. *See* MTD Br. 17 (conceding that "MSHSAA maintains contacts throughout Missouri, including within the Eastern District"). With the State as a plaintiff seeking redress against statewide discriminatory policies, this suit plainly "relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (emphasis removed) (quotation omitted). But even if Dr. Johnson is the only proper plaintiff, venue is still proper in this Court.

To begin with, MSHSAA relies (at 11) on Section 1391(d) in asserting that this case should be venued in the Western District. But the provision expressly applies only to "corporation[s]" and MSHSAA is an unincorporated association. *See* 28 U.S.C. § 1391(d). Thus, MSHSAA "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). As a Missouri association, *see* MTD Br. 12, this Court has general personal jurisdiction over MSHSAA and should not analyze the question under Section 1391(d).

28

But even if Section 1391(d) applied, venue remains proper here. MSHSAA is "deemed to reside in any district . . . within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." Only specific personal jurisdiction related to Section 1391(d)'s venue is at issue. MSHSAA argues that it lacks sufficient contacts with the forum district. MTD Br. 14–17.

The Eighth Circuit applies a five-factor test for assessing the sufficiency of a defendant's contacts: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 619 (8th Cir. 2021) (cleaned up) (quotation omitted). "The first three factors are 'of primary importance,' while the fourth and fifth factors 'carry less weight.'" *Id.* (quotation omitted).

MSHSAA all but concedes the first two factors are met. According to MSHSAA, "MSHSAA maintains contacts throughout Missouri, including within the Eastern District," MTD Br. 17, and MSHSSA "serv[es] more than 200,000 Missouri students," *id.* at 6, with 725 member schools and 277 other affiliated schools or associations, Compl. ¶¶ 53, 56.

Instead, MSHSAA argues that these contacts are "unrelated to the claims asserted in this case." MTD Br. 17. In particular, MSHSAA asserts (at 16–17) that because its offending policy "was proposed, developed, tabulated, and certified in the

29

Western District" and because their discrimination against Dr. Johnson "occurred entirely within the Western District," venue does not lie in the Eastern District.

But that argument rests on a mischaracterization of Plaintiffs' Complaint. Yes, as MSHSAA says, this case is partly about the specific instance of discrimination against Dr. Johnson.  Compl. ¶¶ 30–33, 35, 77–79, 98–125.  But the Complaint also challenges MSHSAA's *statewide* discriminatory policy—which applies to individuals throughout the Eastern District of Missouri who are interested in applying to MSHSAA's board.  *Id.* ¶¶ 65, 67, 76, 127, 138; *see also* MSHSAA Const. art. IV, § 3(a). That discriminatory policy's "inclusion of race [and] sex" as qualifications "harms both society and the individual."  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 265 (1989) (O'Connor, J., concurring in judgment).  Thus, MSHSAA's contacts in the Eastern District of Missouri are related "to the claims asserted in this case."  MTD Br. 17.

MSHSAA's citation to *Aldrich v. National Collegiate Athletic Association*, 484 F. Supp. 3d 779 (N.D. Cal. 2020), is thus inapt.  In *Aldrich*, the plaintiff alleged that the NCAA had failed to legislate and *that* "failure . . . ar[o]se[] out of" the NCAA's headquarters—which is where the "NCAA legislates."  *Id.* at 795.  MSHSAA also (confusingly) cites to the denial of personal jurisdiction over the *Aldrich* plaintiff's failure-to-protect claim because the plaintiff failed to "alleg[e] that the abuse [had] occurred" in the forum state, and if there were any vicarious liability from this claim, it was based on the duty to legislate "ar[i]s[ing]" from the NCAA's out-of-state headquarters.  MTD Br. 17.

30

MSHSAA fails to understand the nature of the claims in *this* case.  Plaintiffs have not brought failure to legislate or failure to protect claims.  Instead, the Complaint challenges a *statewide* policy that discriminates on the basis of race and sex.  *See* Compl. ¶¶ 98–134, ¶¶135–44, ¶¶ 145–52.

Simply put, just as the harm arising from MSHSAA's statewide discriminatory policy is felt in the Western District, it is also "felt here."  *Wright v. Xerox Corp.*, 882 F. Supp. 399, 406 (D.N.J. 1995).  Under the Eighth Circuit's first three "primary factors," *Morningside Church,* 9 F.4th at 619, MSHSAA's discriminatory policy for at-large board positions weigh heavily in favor of the exercise of personal jurisdiction over MSHSAA with respect to these claims.

Returning to the minimum-contacts analysis and the "less weight[y]" fourth and fifth factors, *Morningside Church*, 9 F.4th at 621, "research has not disclosed any Eighth Circuit case in which serious inconvenience or the lack of a forum-state interest has overcome otherwise constitutionally sufficient minimum contacts," *Blue Cross & Blue Shield of N.C. v. Rite Aid Corp.*, 519 F. Supp. 3d 522, 534 n.3 (D. Minn. 2021).  That said, these factors do not weigh against exercising specific personal jurisdiction here.  The Eastern and Western Districts both have an equal interest in seeing MSHSAA's statewide discriminatory policy end.  And Defendants cannot show that the Eastern District is inconvenient as they are headquartered in Missouri and oversee secondary school activities across the entire state.  *See Morningside Church,*

31

9 F.4th at 621 (forum inconvenient when defendants were not from State). MSHSAA is therefore subject to this Court's specific personal jurisdiction.[6]

## IV.   Transfer of venue to the Western District is not warranted.

In the alternative, Defendants ask for this Court to transfer the case to the Western District under 28 U.S.C. § 1404(a): "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." This Court has considerable discretion in deciding whether transfer is warranted, but nonetheless transfer "should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982), *overruled on other grounds by Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1310–11 (8th Cir.1990). This Court should "give considerable deference to . . . plaintiff[s'] choice of the forum," and thus, MSHSAA, as "the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). MSHSAA cannot carry this burden.

MSHSAA cannot meet its burden. Beginning with convenience of the parties and witness, MSHSAA argues (at 20) that transfer to the Western District is proper because the "parties and the key witnesses are located in the Western District." First,

---

[6] In the event that this Court disagrees, Plaintiffs respectfully request this Court to transfer the case to the Western District. *See* 28 U.S.C. § 1406(a) (granting district court discretion to "dismiss, or if it be in the interest of justice, transfer" case if district court finds venue does not lie where case brought). At the very least, any dismissal must be without prejudice.

that Columbia is located in the Western District "has no independent significance in determining whether transfer to that district would be" warranted. *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 245 (1964).[7]   The only significance of the headquarters is "with reference to such factors as the convenience of records, officers, [and] personnel." *Id.* at 245–46; *see also In re Apple, Inc.*, 602 F.3d 909, 913, 915 (8th Cir. 2010) (analyzing "relative ease of travel"—not judicial district—considering "convenience of the parties and witnesses").

Columbia, while located in the Western District, is centrally located in Missouri—sitting along a major highway and nearly equidistant between St. Louis and Kansas City.  MSHSAA has not argued, much less shown, that the "relative ease of travel" "would be significantly" improved by transfer to the Western District. *In re Apple*, 602 F.3d at 913–14.

MSHSAA also argues that the "conduct giving rise to Plaintiffs' claims occurred" in the Western District, but this is not an independent factor for the convenience of the parties.  MTD Br. 20.  As explained above, MSHSAA continues to focus improperly on where the discriminatory provision was "proposed, developed, and certified"—while neglecting the reality that its statewide discriminatory policy applies throughout Missouri. *Id.*

Next, MSHSAA cites Dr. Johnson's residence and the State's capital in the Western District support transfer.  MTD Br. at 20.  But MSHSAA "cannot assert

---

[7] Federal Criminal Procedure Rule 21(b) is the criminal law "analogue" to transfer under Section 1404(a). *United States v. McManus*, 535 F.2d 460, 463 (8th Cir. 1976).

33

plaintiff[s'] inconvenience in support of a motion to transfer," *Am. Can Co. v. Crown Cork & Seal Co.*, 433 F. Supp. 333, 338 (E.D. Wis. 1977); *see James v. Norfolk & W. Ry. Co.*, 430 F. Supp. 1317, 1319 (S.D. Ohio 1976) (same).  As it happens, Plaintiffs deem *this Court* more convenient.  *See Terra Int'l*, 119 F.3d at 695 (8th Cir. 1997).

Turning to the interest of justice, MSHSAA rightly concedes that "[m]ost of the traditional interests-of-justice considerations . . . are neutral." MTD Br. 21.  Without citation, MSHSAA asserts "what matters here most is the forum's connection to the dispute and judicial economy." *Id.*

Beginning with the "forum's connection to the dispute," this is not a "factor[] that courts typically analyze under" the interest of justice.  *Terra Int'l*, 119 F.3d at 966; *see also id.* (listing the "interest of justice" factors: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.").  If anything, the connection to the forum is better related to the convenience of the parties and witnesses.  *See id.*; *see also* MTD Br. 21 (repeating that both the discriminatory provision was "proposed, developed, and certified" and the discrimination against Dr. Johnson occurred in the Western District).

Taking judicial economy, "[t]his factor typically involves consideration of docket backlog and the time to disposition in the two forums," not the stage of the litigation.  *Oien v. Thompson*, 824 F. Supp. 2d 898, 905 (D. Minn. 2010) (citing *In re Apple*, 602 F.3d at 915).  MSHSAA's only argument related to judicial economy is that

34

"this case is in its early stages." MTD Br. 21. Even if this were a proper consideration, it does not "independently support[] transfer." *Yeti Coolers, LLC v. Love Deals Inc.*, No. 1:23-CV-79, 2023 WL 4754479, at *6 (W.D. Tex. July 24, 2023). In sum, MSHSAA has failed to meet its "burden of proving that transferred is warranted" and why this Court should not "give considerable deference to . . . plaintiff[s'] choice of the forum." *Terra Int'l*, 119 F.3d at 695. Accordingly, this Court should deny MSHSAA's motion to transfer.

## CONCLUSION

For the foregoing reasons, the Court should deny MSHSAA motion to dismiss for improper venue or in the alternative to transfer, to dismiss for lack of subject matter jurisdiction, and to dismiss for failure to state a claim.

35

Dated: May 7, 2026                           Respectfully submitted,

                                             **CATHERINE L. HANAWAY**
                                             ATTORNEY GENERAL

                                             */s/ Louis J. Capozzi, III*
                                             Louis J. Capozzi III, #77756(MO)
                                               *Solicitor General*
                                             William James Seidleck, #77794(MO)
                                               *Principal Deputy Solicitor General*
                                             Graham D. Miller, #77656(MO)
                                               *Deputy Solicitor General*
                                             OFFICE OF THE ATTORNEY GENERAL
                                             Old Post Office Building
                                             815 Olive Street, Suite 200
                                             St. Louis, MO 63101
                                             Phone: (573) 645-9662
                                             Louis.Capozzi@ago.mo.gov
                                             William.Seidleck@ago.mo.gov
                                             Graham.Miller@ago.mo.gov

                                             *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 7, 2026 the foregoing was filed electronically through the Court's electronic filing system to be served electronically on counsel for all parties.

*/s/ Louis J. Capozzi, III*